648 P.2d 309

STATE of New Mexico, Plaintiff-Appellee,

v.

John AMADOR and Cotton Belt Insurance Company, Defendants-Appellants,

and

Finn Lee Patton, Defendant.

No. 13787.

Supreme Court of New Mexico.

July 13, 1982.

Hinkle, Cox, Eaton, Coffield & Hensley, Paul J. Kelly, Jr., Richard E. Olson, Roswell, for defendants-appellants.

Jeff Bingaman, Atty. Gen., Andrea B. McCarty, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

PAYNE, Justice.

Finn Lee Patton (the defendant) was charged with assault with the intent to commit criminal sexual penetration in the second degree, pursuant to Section 30–3–3, N.M.S.A.1978. The bondsman, John Amador, an agent of Cotton Belt Insurance Co., posted $10,000 bond to secure the defendant's release. When the defendant failed to appear for trial, the district court issued a bench warrant for his arrest, declared the bond to be forfeited, and issued an order to show cause why judgment should not be entered on the forfeiture. After conducting a hearing, the district court ordered the forfeiture of the entire amount of the bail bond. The bondsman appeals the judgment of forfeiture. We reverse.

The defendant was notified of his trial date, but the bondsman was not. The defendant failed to appear because he was incarcerated in Texas on a separate charge five days before the date set for trial. The bondsman first learned of the defendant's failure to appear when he was served with the order to show cause. Subsequently the bondsman located the defendant in the Midland, Texas, county jail. At the hearing on the show cause order, he stated that a de-

tainer had been filed with the proper Texas authorities. He also stated that he would tender to the court an amount necessary to reimburse the court for any extradition and transportation costs reasonably incurred in retrieving the defendant.

The bondsman appeals the total forfeiture on two grounds. He argues that the forfeiture should have been set aside because he had a due process right to receive personal notice of the defendant's trial date. He also argues that because the defendant was incarcerated in another jurisdiction the district court abused its discretion in refusing to set aside the forfeiture.

I.

The bondsman asserts that the entire forfeiture process deprived him of property without due process of law, contrary to the due process clauses of both the United States and New Mexico Constitutions. Because he did not receive notice of the trial date, he was deprived of the opportunity to fulfill his obligations under the bond contract. He argues that the order to show cause and the resulting hearing did not provide him with an opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); by the time of the hearing, the critical factual issues had already been determined and the burden of proof had shifted to him to show cause why the bond should not be forfeited.

When the bondsman posted bond for the defendant, he entered into a contract with the state under which he guaranteed that the defendant would appear before the court in accordance with any order or direction of the court. *See Commonwealth v. Stuyvesant Insurance Company*, 366 Mass. 611, 321 N.E.2d 811 (1975). The bondsman's obligation was not to produce the defendant at a time later to be set, "but was rather an obligation to answer, to the extent of the penalty, for the default of the [defendant] ... in the event [he] did not appear on the date set for trial. When the [defendant]

defaulted by [his] failure to appear, the liability of the [bondsman], as surety, became fixed." *Pride v. Anders*, 266 S.C. 338, 223 S.E.2d 184, 186 (1976). The only determination to be made by the court at the time of trial that is relevant to the bondsman's obligation is whether the defendant is present. There is obviously little risk of an erroneous determination in that situation. Even if the bondsman had received notice of the trial date so he could appear, his liability still would have attached when the defendant did not appear. The bondsman could not avoid liability by explaining where the defendant was or by attempting to obtain a continuance to allow him to try to find the defendant. Any such efforts by the bondsman could only mitigate his liability.

Nor was the bondsman deprived of any substantial right at the time of trial. His money was not seized, "no source of revenue essential to [Cotton Belt's] corporate life was cut off," none of his privileges were suspended, and he was not subjected to any new obligation beyond that for which he had already contracted. *People v. Surety Ins. Co.*, 82 Cal.App.3d 229, 147 Cal.Rptr. 65, 71 (1978). The bondsman was protected by the participation of a judicial officer in the determination and by the provision of a hearing before judgment was entered on the forfeiture. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The bondsman, as one in the business of posting bonds, was subjected to no more liability than that to which he knowingly contracted.

The fact that the bondsman bore the burden of proof at the hearing on the forfeiture did not impair his rights. Even if he had appeared at the time set for trial, the burden of proof would have been his; once the defendant failed to appear, anything asserted by the bondsman in mitigation of his liability would have been his to prove because he, as custodian of the defendant, *see Commonwealth v. Stuyvesant Insurance Company, supra,* is deemed to have the peculiar knowledge of the whereabouts of the defendant, *see United States*

*v. Marquez*, 564 F.2d 379 (10th Cir. 1977); McCORMICK ON EVIDENCE § 337, at 787 (2d ed. 1972).

■ Because there is little risk of an erroneous determination of the defendant's failure to appear, and considering the nature of the obligation the bondsman knowingly entered into, the hearing he received was adequate to protect his rights. We hold that the forfeiture process was not unconstitutional. The bondsman did not have a right to receive personal notice of the defendant's trial date under the due process clauses of the United States and New Mexico Constitutions.

II.

The bondsman asserts that because the defendant was incarcerated in another jurisdiction, the district court abused its discretion in refusing to set aside the forfeiture. Because he is willing to incur the expense of returning the defendant to New Mexico and because a detainer has been lodged with the proper authorities, he claims that the State has not been harmed and that justice does not require forfeiture.

The State argues for application of the majority rule that incarceration in another jurisdiction is not an excuse for the defendant's failure to appear so as to exonerate the bondsman. Because the purpose of the bail bond is to assure the defendant's appearance, and the bondsman assumed the risk of his failure to appear, it was not an abuse of discretion for the trial court to order forfeiture in furtherance of that purpose.

The State also argues that in *State v. United Bonding Insurance Company*, 81 N.M. 154, 464 P.2d 884 (1970), we have already decided that incarceration in another jurisdiction is not an excuse for a defendant's failure to appear. There, following the affirmance of his conviction on appeal, the defendant failed to appear on the writ of commitment. We based our holding on the fact that "[d]uring a portion of the time when the writs were outstanding ... [the defendant] was at large. He was then as

subject to apprehension and surrender by [the bondsman] as he was to the federal authorities who found him in Arizona." *Id.* at 158, 464 P.2d at 888. We then cited several cases with "interesting parallels in their facts to this situation. In each no exoneration of bail was granted when the [defendant], though taken into custody in other jurisdictions, had escaped and was at large when the failure to respond occurred." *Id.* (citations omitted). The same day we decided *United Bonding,* we decided *State v. Hathaway,* 81 N.M. 159, 464 P.2d 889 (1970), in which we applied the *United Bonding* holding to a situation in which the defendant failed to appear at his arraignment and subsequently was incarcerated in Florida. There, too, the defendant was at large during a portion of the time when a court order to appear was outstanding. Here, however, the defendant was incarcerated in Texas at the time set for his trial, at the time of the forfeiture hearing, and at all times in between. Therefore *United Bonding* is not controlling.

Section 31–3–2(B), N.M.S.A.1978, states that "[t]he court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." Section 31–3–2(D), N.M.S.A.1978, provides that at the hearing on the order to show cause why judgment should not be entered on the forfeiture, "[i]f good cause is not shown the court may then enter judgment against the [bondsmen] ... for such sum as it sees fit, not exceeding the penalty fixed by the bail bond or recognizance." Each of the provisions establishes a standard requiring the court to exercise its discretion in determining whether to order forfeiture of the entire amount of the bond. Therefore, we shall examine the purposes of the bail bond and the actions of the bondsman to determine whether the court abused its discretion.

We have previously stated that the purpose of bail "is to secure the attendance of the defendant" at his trial. *State v. Cotton Belt Ins. Co.,* 97 N.M. 152, 155, 637 P.2d 834, 837 (1981). Bail is not a source of revenue for the state.

The purpose of the bond or security is to secure a trial, its object being to combine the administration of justice with the convenience of a person accused, but not proved, to be guilty. If the accused does not appear the bail may be forfeited, not as a punishment to the surety or to enrich the Treasury of the State, but as an incentive to have the accused return or be returned to the jurisdiction of the court.

*Irwin v. State,* 17 Md.App. 518, 302 A.2d 688, 692 (1973). The release of a defendant on bail bond is an accommodation of competing interests; it gives

not lip service, but full fealty to the basic principles of freedom, inherent in our system, that an accused is presumed to be innocent until his guilt is established by the evidence beyond a reasonable doubt, [and] it reconciles a sound administration of justice with the rights of the accused to be free from harassment and confinement, unhampered in the preparation of his defense and not subjected to punishment prior to conviction.

*Dudley v. United States,* 242 F.2d 656, 659 (5th Cir. 1957) (citation omitted). Bail furthers the sound administration of justice by placing the defendant "in the protective custody of a surety—a jailer of his own choosing—, to insure his presence for trial at the call of the court without in any way delaying, impairing, or unduly burdening the administration of justice or in any manner prejudicing the state in its prosecution." *Application of Shetsky,* 239 Minn. 463, 60 N.W.2d 40, 46 (1953) (footnote omitted). The state is relieved of the expense and burden of keeping the defendant pending his trial. *State v. Jakshitz,* 76 Wash. 253, 136 P. 132 (1913). The state is also aided in its efforts to recapture a fugitive defendant by the bondsman, "who, it is presumed, will be moved by an incentive to prevent judgment [on the forfeiture] or, if it has been entered, to absolve it and to mitigate its penalties." *Id.,* 136 P. at 133.

■ In order to promote the purpose of bail, it is desirable that bondsmen be encouraged to enter into bail contracts. And,

274

although the bondsman's obligation is to guarantee the defendant's presence rather than produce him at trial, *see Pride v. Anders, supra*, the bondsman nevertheless aids in the administration of justice when he acts to protect his financial interest by producing the defendant. Strict application of forfeiture statutes discourages bondsmen from giving bail or producing the defendant. *See* Note, *The Bail Bond Practice from the Perspective of Bondsmen*, 8 Creighton L. Rev. 865 (1975); Note, *Compelling Appearance in Court: Administration of Bail in Philadelphia*, 102 U.Pa.L.Rev. 1031, 1065–66 (1954). Considering the purposes of bail and the policy to encourage bondsmen to enter into bail contracts, it is unjust to enrich the state treasury when a bondsman has been diligent in his efforts to apprehend and bring back for trial a defendant but has been thwarted by the actions of another sovereign jurisdiction.

Here the bondsman did not connive with the defendant to avoid justice. He located the defendant in the Texas jail promptly after he was served with the order to show cause. He assured that there was a detainer filed with the Texas authorities. He offered to pay all reasonable extradition and transportation costs incurred by the state. The bondsman did all he could to secure the defendant's presence and insure the state against its monetary loss. The State is not unduly prejudiced by the defendant's failure to appear because he can be returned to New Mexico for trial once he is released.

For these reasons, justice does not require the forfeiture of the entire amount of the bond. Considering the facts of the case and the purpose of bail, it was an abuse of discretion for the trial court to order the total forfeiture of the bond.

Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and FEDERICI, J., concur.