**STATE of Minnesota, Respondent,**

v.

**Louis WILLIAMS, Respondent,**

**Interstate Bonding, Inc., Appellant.**

**No. C4–97–267.**

Court of Appeals of Minnesota.

Sept. 16, 1997.

Review Denied Nov. 18, 1997.

---

2. Because of the limitation, the defense in *Koskela* decided not to present the expert evidence.

*Koskela*, 536 N.W.2d at 630.

Brian M. Marsden, Frank A. Schulte, Roseville, for appellant.

Hubert H. Humphrey III, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, and Thomas N. Kelly, Assistant County Attorney, Buffalo, for respondent State of Minnesota.

Richard R. Hermes, Buffalo, for respondent Louis Williams.

Considered and decided by CRIPPEN, P.J., and PARKER and SHORT, JJ.

## OPINION

SHORT, Judge.

After Louis Williams failed to make two scheduled court appearances, the trial court ordered forfeiture of the bail bond securing his appearance. The surety, Interstate Bonding, Inc. (Interstate), appeals the trial court's order denying its motions to: (1) reinstate and discharge the bond; and (2) rescind the 30–day suspension automatically imposed on Interstate for failure to pay the forfeited bond.

## FACTS

On September 2, 1996, Interstate posted a $2,000 bail bond to guarantee the appearance of Louis Williams to face charges of motor vehicle theft and other offenses in Wright County. When Williams failed to make his scheduled court appearance on September 26, the district court rescheduled the hearing to October 10 and stayed forfeiture of the bond until that time. At the trial judge's direction, court personnel notified Interstate on September 27 of Williams's nonappearance. Williams again failed to appear on

October 10, 1996, and the trial court ordered forfeiture of the $2,000 bond. Interstate was immediately notified of the order and of the 90–day deadline for timely payment of the forfeited bond. *See* Minn. R. Gen. Pract. 702(e).

Interstate's investigator apprehended Williams on November 7, over 40 days after Williams's first nonappearance in court, but was forced to release him due to the absence of an active Wright County warrant for his arrest. Williams reappeared in court on November 20, and was released on his own recognizance. At that time, the trial court noted Interstate owed no further surety and would be discharged of its obligation by paying the $2,000 amount already forfeited.

Interstate filed a motion on December 2 for the trial court to reinstate and discharge the bond, effectively releasing Interstate from its $2,000 obligation. Although Williams had eventually appeared in court, the trial court denied reinstatement of the bond because Interstate had been promptly notified of Williams's initial failure to appear, and had taken no action to produce him for his second scheduled appearance or to account for that failure.

The 90–day deadline for payment of the forfeited bond passed on January 9, 1997, without Interstate having paid the bond or making another motion for reinstatement. One month later, the Wright County Administrator learned of Interstate's nonpayment of the penalty and immediately notified all other Minnesota judicial districts and Interstate itself that the company's bond writing privileges were suspended statewide, effective immediately, pursuant to Minn. R. Gen. Pract. 702(h). Under the court rule, the suspension would continue until 30 days after Interstate's payment of the forfeited bond. *See id.* Interstate rendered payment the following day, February 5, 1997.

On February 6, Interstate brought a second motion for retroactive reinstatement and discharge of the bond, and also moved the court to rescind the suspension of its bond writing privileges, arguing that its failure to pay had been inadvertent and that it had been instrumental in Williams's captures, in November and again in January, when an Interstate investigator informed Minneapolis police, who had Williams in custody, of Williams's outstanding Wright County bench warrant. The trial court denied both motions because: (1) Interstate received timely notice of the court's denial of its first motion for reinstatement, and the 90–day payment period had expired without payment; and (2) Minn. R. Gen. Pract. 702(h) provides for a mandatory 30–day suspension. The trial court stayed Interstate's 30–day suspension pending the outcome of this appeal.

The state moved to strike an affidavit by the company president appended to Interstate's reply brief. Because that affidavit was prepared after the trial court's decision, solely for the purpose of appeal, we grant the state's motion. *See* Minn. R. Civ.App. P. 110.01 (providing record on appeal consists only of papers filed in trial court, exhibits, and transcript).

## ISSUES

Did the trial court abuse its discretion in refusing to discharge and reinstate the bail bond securing Williams's appearance?

Did the trial court err in refusing to rescind Interstate's suspension from bond writing privileges?

## ANALYSIS

In reviewing a trial court's order concerning discharge of a bail bond, we determine whether the trial court abused its discretion. *Shetsky v. Hennepin County (In re Application of Shetsky)*, 239 Minn. 463, 471–72, 60 N.W.2d 40, 46 (1953); *see* Minn. Stat. § 629.59 (1996) (providing when penalty on bail bond is judged forfeited, trial court "may forgive or reduce the penalty * * * on any terms and conditions it considers just and reasonable"). Construction of a court rule presents a question of law, which this court reviews de novo. *See Stoebe v. Merastar Ins. Co.*, 554 N.W.2d 733, 735 (Minn.1996) (examining rule of civil procedure under de novo standard).

## I.

█ By accepting a premium and agreeing to act as surety, a bond writing company undertakes to ensure that a defendant will personally appear to answer the charges against him. *State v. Due,* 427 N.W.2d 276, 278 (Minn.App.1988), *review denied* (Minn. Sept. 28, 1988). When bail is forfeited and a surety requests relief from its obligation on the bond, courts consider the purpose of bail; the civil nature of the proceedings; the burden of proof; the cause, purpose and length of the defendant's absence; the good faith of the surety as measured by the willfulness of the defendant; and the prejudice to the state by the delay. *Shetsky,* 239 Minn. at 471, 60 N.W.2d at 46. A willful and unjustifiable default by the defendant weighs against forgiveness of a bond penalty. *See id.* at 472–73, 60 N.W.2d at 47–48 (examining defendant's excuses for failure to appear, and stating defendant's willful and unjustifiable default was chargeable to surety).

█ Although Interstate eventually assisted authorities by capturing Williams once and facilitating his capture a second time, the fact remains that Williams failed to make his scheduled court appearances on September 26 and October 10, 1996, the dates for which Interstate issued a bond to secure his appearance. The company took no action to obtain Williams's presence at his second appearance date or to explain its failure to do so, even though the trial court had informed Interstate of Williams's absence on September 26 and of its stay of forfeiture pending the second date. Furthermore, Interstate has offered no evidence that Williams's absence at either of the first two scheduled appearances was anything but willful and · unjustifiable. Interstate's assistance in Williams's untimely apprehension does not mandate forgiveness of the bond penalty. *Cf. Shetsky,* 239 Minn. at 470–73, 60 N.W.2d at 46–48 (stating defendant's willful and unjustifiable default was chargeable to surety and affirming trial court's denial of surety's petition for discharge although defendant was eventually caught, tried and acquitted). Under these circumstances, we cannot say the trial court abused its discretion in refusing to reinstate and discharge the bond. *Cf.*

*Due,* 427 N.W.2d at 277–78 (concluding trial court was within its discretion in refusing to reinstate and discharge forfeited bond, although court administrator had failed to notify surety of defendant's failure to appear and had waited three years before ordering bond's forfeiture).

## II.

█ Pursuant to Minn. R. Gen. Pract. 702(h), a surety's failure to make payment on forfeited bail within 90 days "shall automatically suspend the surety and its agent from writing further bonds. Such suspension shall apply throughout the State of Minnesota and shall continue for a period of thirty (30) days from the date the principal amount of the bond is deposited in cash with the court administrator." Given the language of the rule, the trial court properly concluded its sanction was mandatory. *See* Minn.Stat. § 645.44, subd. 16 (1996) (providing rule of statutory construction that "shall" is mandatory); *see also Nguyen v. State Farm Mut. Auto. Ins. Co.,* 558 N.W.2d 487, 490 (Minn. 1997) (applying canon of statutory construction in interpreting district court rule); *cf.* Minn.Stat. § 629.59 (1996) (permitting trial court discretion to forgive monetary penalty on forfeited bond).

Under a proviso to the general rules of practice, the trial court may have had the power to waive Interstate's mandatory suspension to prevent "manifest injustice." *See* Minn. R. Gen. Pract. 1.02 (providing a "judge may modify the application of these rules in any case to prevent manifest injustice"); *Hopkins by LaFontaine v. Empire Fire & Marine Ins. Co.,* 474 N.W.2d 209, 212 (Minn. App.1991) (permitting district court to waive its own rules); *see also* 3A David F. Herr & Laurie A. Kindel, *Minnesota Practice* § 1.3 (1996) (recognizing courts may relax application of district court rules to prevent "having the rules subvert their purpose of making practice more uniform and just"). However, the record shows Interstate received timely notice of the forfeiture of the bail bond and the 90-day payment deadline, received notice of the trial court's denial of its motion to reinstate and discharge the bond, and yet failed to pay the penalty until one month

after the deadline, when it learned its bond writing privileges had been revoked. Under these circumstances, the trial court did not abuse its discretion in refusing to rescind Interstate's temporary suspension.

Interstate urges this court to find Minn. R. Gen. Pract. 702(h) violates its right to constitutional due process. Because this issue was not raised to or considered by the trial court, we decline to address it on appeal. *See Thayer v. American Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982) (holding appellate court may only consider issues presented to or considered by trial court); *see also Waldner v. Peterson*, 447 N.W.2d 217, 219 (Minn.App.1989) (declining review of constitutional question not raised at trial court level).

## DECISION

The trial court acted within its discretion in refusing to reinstate and discharge the bond securing Williams's appearance, despite Interstate's assistance in Williams's untimely capture. Additionally, the trial court did not abuse its discretion by declining to rescind Interestate's automatic 30–day suspension from bond writing privileges.

**Affirmed and motion granted.**