**STATE of Minnesota, Respondent,**

v.

**Andrew Jerel STORKAMP, Defendant,**

**Bartsh Bail Bonds, Petitioner, Appellant.**

**No. CX–01–1462.**

Supreme Court of Minnesota.

Feb. 20, 2003.

---

Michael J. Michalski, St. Cloud, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Roger S. Van Heel, Stearns County Attorney, Richard J. May, Assistant Counsel, St. Cloud, MN, for Respondent.

## OPINION

PAGE, Justice.

This appeal stems from an order denying the motion of the surety, Bartsh Bail Bonds (Bartsh), for reinstatement, discharge, and refund of a $5,000 forfeited bail bond. The bail bond had been forfeited after the defendant, Andrew Storkamp, willfully failed to appear at two scheduled omnibus hearings. The district court, recognizing the good-faith efforts expended by Bartsh in apprehending Storkamp and the lack of prejudice to the state caused by his absence, nonetheless denied the surety's motion. The court of appeals affirmed, concluding that the district court did not abuse its discretion. We reverse.

Storkamp was charged in Stearns County District Court with controlled substance crime in the second degree under Minn. Stat. § 152.022, subd. 2(1) (2002). He was released upon posting a $5,000 bail bond through Bartsh. Later, Storkamp signed a promise to appear in court for an omnibus hearing on February 9, 2001. He failed to appear at the omnibus hearing, but he was detained and taken into custody shortly after a bench warrant was issued for his arrest. Storkamp was released on bail again on February 15, 2001, after he posted an additional bail bond of $3,000 through Bartsh and signed a promise to appear for an April 6, 2001, omnibus hearing. Storkamp did not appear for the April 6 hearing and based on this missed appearance the district court, after notifying Bartsh, ordered forfeiture of the $5,000

bail bond.[1]

Bartsh commenced efforts to apprehend Storkamp and return him to police custody. On June 3, 2001, Bartsh successfully returned Storkamp to police custody. In doing so, Bartsh incurred $1,200 in expenses. After Storkamp was returned to custody, Bartsh moved the district court for reinstatement, discharge, and a refund of the forfeited $5,000 bail bond. The district court commended the surety for the effort put forth in tracking Storkamp down and noted there was no evidence indicating that the state had been prejudiced by Storkamp's absence. However, the district court found that Storkamp had acted in bad faith and willfully defaulted on his bail, that Storkamp's bad faith was attributable to Bartsh, and that Bartsh did not provide any justification for mitigation of the forfeited bail and denied Bartsh's motion.

The court of appeals affirmed based on its reading of *Shetsky v. Hennepin County (In Re Shetsky)*, 239 Minn. 463, 471, 60 N.W.2d 40, 46 (1953), holding that the district court did not abuse its discretion. However, the court of appeals found this result troublesome because it felt *Shetsky* placed "entirely too much emphasis on the defendant's wrongful conduct instead of on much more practical considerations such as prejudice to the prosecuting authority and the efforts of the surety to return defendant to custody."

■■■ On appeal, the only issue before the court is whether the district court erred in concluding that evidence of the defendant's bad faith requires an automatic forfeiture of the entire bail amount when the surety has made a successful good-faith effort to apprehend the defendant and the state has presented no evidence that it was prejudiced by the defendant's absence. We review the district court's denial of a motion to reinstate, discharge, and refund forfeited bail bonds for an abuse of discretion. *Shetsky v. Hennepin County (In re Shetsky)*, 239 Minn. 463, 471, 60 N.W.2d 40, 46 (1953). A district court abuses its discretion when its ruling is based on an erroneous view of the law. *See Almor Corp. v. County of Hennepin*, 566 N.W.2d 696, 701 (Minn.1997).

■■■ Minnesota Statutes § 629.58 (2002) provides that when a person accused of a criminal act is released upon the posting of a bond and fails to perform the conditions of the bond, the bond will be defaulted. The penalty for default is forfeiture of the amount of the bond to the court. *See id.* We have determined that the bail statutes are remedial and should be interpreted liberally to ensure that their purpose is accomplished. *Shetsky*, 239 Minn. at 468–69, 60 N.W.2d at 45. In releasing the accused upon the posting of a bond, a dual purpose is served: relieving the accused of imprisonment and relieving the state of the burden of detaining him pending his trial. *Id.* at 471; 60 N.W.2d at 46. This is accomplished by placing the accused in the "custody" of "a jailer of his own choosing," the surety, who will ensure the accused's presence at trial without in any way impairing or delaying the administration of justice or prejudicing the state in its prosecution. *Id.*

■■■ If the defendant fails to appear and the bond goes into default, the court may forgive or reduce the penalty if, based on the circumstances of the case and the situation of the parties, it determines that such action is just and reasonable. Minn. Stat. § 629.59 (2002). The court may not

---

1. The district court noted that the second bail bond inadvertently was not forfeited at this time. The court of appeals treated this inadvertence as an appropriate mitigation for Bartsh's expenses in recapturing Storkamp and turning him over to the authorities.

treat bail as a way to increase the revenue of the state or to punish the surety. *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46. Section 629.58 is, in part, intended to encourage sureties to voluntarily pay the penalty for failing to ensure the presence of the accused without requiring that the state undergo the expense of litigation to recover the defaulted bond amount. *Shetsky*, 239 Minn. at 469, 60 N.W.2d at 45. It also serves to encourage sureties to locate, arrest, and return defaulting defendants to the authorities to facilitate the timely administration of justice. *See State v. Midland Ins. Co.*, 208 Kan. 886, 494 P.2d 1228, 1232 (1972) (noting that "[t]here would be small incentive for the surety to run down and return its principal at its own expense if no part of the penalty of the bond could be remitted under equitable circumstances"); *State v. Amador*, 98 N.M. 270, 648 P.2d 309, 312–13 (1982) (stating that a statutory provision providing for mitigation upon a surety's production of a defaulting defendant creates incentive for the surety to track down and apprehend fleeing defendants). If section 629.58 is interpreted too narrowly, its incentives will be undermined and its purposes defeated. *See Shetsky*, 239 Minn. at 469, 60 N.W.2d at 45; *Amador*, 648 P.2d at 312–13 (explaining that strict application of forfeiture statutes discourages sureties from giving bonds or producing defaulting defendants). The burden of proof to establish that mitigating circumstances exist rests on the party seeking mitigation. *Shetsky*, 239 Minn. at 472, 60 N.W.2d at 46.

In *Shetsky*, we established several factors that a reviewing court shall consider when determining whether the district court abused its discretion in denying a motion to reinstate a forfeited bail bond. Those factors are: (1) the purpose of bail, the civil nature of the proceedings, and the cause, purpose, and length of the defendant's absence; (2) "the good faith of the surety as measured by the fault or willful-

ness of the defendant"; (3) "the good-faith efforts of the surety—if any—to apprehend and produce the defendant"; and (4) any prejudice to the state in its administration of justice. *Id.* at 471, 60 N.W.2d at 46. In evaluating these factors, we recognized that when the accused willfully does not meet the conditions of his or her bond without a justifiable excuse, this misconduct is attributable to the surety. *Id.* at 474, 60 N.W.2d at 48. We also noted that when the prosecution provides evidence that it was deprived of proof or otherwise adversely affected because of the defendant's unexcused absence, this weighed heavily against the remittance of the forfeited bond. *Id.* at 470, 60 N.W.2d at 45.

Bartsh argues that the district court abused its discretion in the way it applied *Shetsky* to the facts of this case. Bartsh maintains that a correct application of *Shetsky* would have resulted in the reinstatement of the forfeited bond. Bartsh also argues that *Shetsky* needs to be revisited if it requires that a court deny a motion to reinstate a bond when the defendant absconds in bad faith even though the surety acted in good faith in successfully returning the defendant to the authorities and the state presents no evidence that it suffered any prejudice.

In this case, the district court found that Bartsh acted in good faith in apprehending Storkamp and that Storkamp's absence did not result in prejudice to the state. Those findings notwithstanding, the district court focused on the fact that the defendant had acted in bad faith, found that "[t]he surety did not [provide] a justification for mitigation of forfeited bail," and denied Bartsh's motion. In doing so, the district court did not explain why the bad-faith conduct trumped both Bartsh's good-faith effort to return Storkamp to justice and the lack of prejudice to the state. Thus, it appears that the district court assumed that the defendant's bad-faith conduct automatical-

ly trumped Bartsh's good-faith apprehension of Storkamp and the lack of prejudice to the state.

In *Shetsky*, we never attributed this type of preeminence to the bad-faith conduct of the defendant. In fact, if we were to now hold that the bad faith of the defendant automatically trumps the surety's good-faith effort to return the defendant to justice and the lack of prejudice to the state, those factors would become largely irrelevant except when the surety can prove that the failure to appear is justified. That result would undermine and frustrate the purposes of encouraging the surety to voluntarily surrender the bond amount, as well as the purpose of encouraging sureties to locate, arrest, and return defendants who have absconded. *See Midland*, 494 P.2d. at 1232 (stating that "[t]here would be small incentive for the surety to run down and return its principal at its own expense if no part of the penalty of the bond could be remitted under equitable circumstances"); *see also Shetsky*, 239 Minn. at 476, 60 N.W.2d at 49 (Loring, C.J., dissenting) (noting that it is not desirable to create a situation where it would be futile under any circumstance for a surety to apply for relief from forfeiture). Therefore, we conclude that the district court abused its discretion when it found that the defendant's bad faith controlled its decision regarding whether to reinstate, discharge, and refund the forfeited bond amount.

Based on this conclusion and our review of the record, we reverse the court of appeals and remand to the district court for reinstatement, discharge, and refund of the forfeited $5,000 bail bond.

Reversed and remanded with instructions.