*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0696
A14-0705**

State of Minnesota,
Respondent,

vs.

Draveetray Lyrell Williams,
Defendant (A14-0696),

Lawrence Craig Ogris,
Defendant (A14-0705),

Midwest Bonding, LLC,
Appellant.

**Filed December 22, 2014
Affirmed
Chutich, Judge**

Ramsey County District Court
File No. 62-CR-12-9722
File No. 62-CR-13-3280

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

James McGeeney, Doda & McGeeney, P.A., Rochester, Minnesota (for appellant)


        Considered and decided by Chutich, Presiding Judge; Stauber, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Midwest Bonding, LLC appeals two district court orders reinstating and reimbursing ninety percent of the forfeited bonds in each case, arguing that the district court abused its discretion by not reinstating the full amounts. Because we cannot say that the district court abused its discretion in reinstating ninety percent of the bonds given the circumstances of this case, we affirm.

## FACTS

This consolidated appeal stems from two unrelated criminal cases.

### *Draveetray Williams*

In December 2012, defendant Draveetray Williams was charged by complaint with two counts of first-degree aggravated robbery and one count of second-degree assault. Bail was initially set at $40,000. Appellant Midwest Bonding, LLC posted an appearance bond of $40,000 on behalf of Williams.

The complaint was later amended to add one count of possession of a firearm by an ineligible person, to which Williams agreed to plead guilty in exchange for dismissal of the other charges. After a continuance, sentencing was scheduled for October 23, 2013. Williams failed to attend this hearing. The district court issued a bench warrant and ordered the bond forfeited.

Upon receiving notice of the forfeiture, Midwest began an investigation to find Williams. When the investigation proved unsuccessful, Midwest hired a fugitive recovery agent to find him. On November 20, 2013, Williams's grandmother called

Midwest's agent and informed him that Williams was at a White Castle in St. Paul. The agent contacted the Ramsey County Drug Task Force, and the sheriff's office apprehended Williams. Williams was sentenced one week later.

### *Lawrence Ogris*

In May 2013, defendant Lawrence Ogris was charged with one count of second-degree criminal sexual conduct and one count of first-degree burglary. Bail was set at $75,000. Midwest posted an appearance bond of $75,000 on behalf of Ogris.

On January 27, 2014, Ogris was in the Hennepin County Jail on another charge. He was released from Hennepin County without bail to make doctors' appointments. He entered treatment the next day and missed his court hearing in this case on Friday, January 31. The district court issued a bench warrant and ordered the bond forfeited.

Midwest then began an investigation to locate Ogris and hired a fugitive recovery agent to find him. The agent learned that Ogris had absconded from a treatment facility on February 9, 2014. Ogris was found and transported to the Hennepin County Sheriff on February 11, and Hennepin County turned Ogris over to Ramsey County.

### *Reinstatement Petitions and Hearings*

Midwest petitioned the district court to reinstate and discharge both bonds. Midwest argued that it immediately began investigations when it received the forfeiture notices and that after the investigations were unsuccessful, it hired fugitive recovery agents at a cost of $4,000 for Williams and $7,500 for Ogris. The state recommended reinstating and discharging Williams's bond in the amount of $36,000 and Ogris's bond in the amount of $67,500, a ten-percent deduction in each case. The district court

3

followed the state's recommendation. Midwest moved the district court to reconsider and scheduled a hearing.

In March 2014, the district court held hearings on the issue of bond reinstatement.[1] Midwest contended first that the ten-percent reduction in both reinstatements was not mandated by Minnesota General Rule of Practice 7.02. Midwest also noted that its agents apprehended both defendants at its own expense. Midwest argued that the factors from *Shetsky v. Hennepin County (In re Shetsky)*, 239 Minn. 463, 60 N.W.2d 40 (1953), weighed in favor of full reimbursement. It also stated that no prejudice to the state existed because both defendants had been apprehended and sentenced. And Midwest noted that a bond company's responsibility is not to ensure that a defendant appears but to find a defendant if he does not. The state opposed reinstatement of the full amounts.

The district court found that Midwest was not entitled to receive the full amounts of the bonds. The district court noted the risks involved in bonding and that those risks came to fruition, to the great disadvantage of the court. The district court further noted that the state was prejudiced not by the reinstatement of the bond, but by the defendants' failure to appear. The district court denied both motions to reconsider. This appeal followed.

---

[1] Although the district court held separate hearings for each defendant, the hearings took place on the same day before the same district court judge. Both the district court and Midwest's attorney referenced their earlier reasoning in the later hearing.

## D E C I S I O N

### A. *Bail Reinstatement*

Minnesota Statutes section 629.58 (2012) provides that when an accused is released on bond and fails to perform the conditions of that bond, it will be defaulted. If the bond is defaulted, the district court may forgive or reduce the penalty if—given the circumstances of the case and the situation of the parties—it determines that it is just and reasonable to do so. Minn. Stat. § 629.59 (2012). The district court's denial of a motion to reinstate, discharge, and refund forfeited bonds is reviewed for abuse of discretion. *State v. Storkamp*, 656 N.W.2d 539, 541 (Minn. 2003) (citing *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46).

A reviewing court considers four factors when determining whether the district court abused its discretion in denying a motion to reinstate a forfeited bond:

> (1) the purpose of bail, the civil nature of the proceedings, and the cause, purpose, and length of the defendant's absence; (2) "the good faith of the surety as measured by the fault or willfulness of the defendant"; (3) "the good-faith efforts of the surety—if any—to apprehend and produce the defendant"; and (4) any prejudice to the state in its administration of justice.

*Id.* at 542 (quoting *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46). The burden of proof to establish that the factors weigh in favor of reinstatement is on Midwest, but the burden to establish prejudice is on the state. *See State v. Askland*, 784 N.W.2d 60, 62 (Minn. 2010).

### B. **Shetsky** *Factors*

As a threshold matter, we note that the record before us is somewhat unclear as to how much consideration the district court gave to each *Shetsky* factor. Effective appellate

review of a district court's discretionary decision requires specifically detailed findings to demonstrate the district court's consideration of all relative factors. *See, e.g.*, *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989). Nevertheless, given the record before us, the district court's explanation of its decision to reinstate ninety percent of the bonds, and our examination of the *Shetsky* factors, we conclude that the district court acted within its discretion in setting the amount of reimbursement.

### 1. Purpose of Bail

Bail is not to be treated as a way to punish a surety, *Storkamp*, 656 N.W.2d at 541-42, and one purpose of bail "is to encourage sureties to locate, arrest, and return defaulting defendants to the authorities to facilitate the timely administration of justice," *State v. Vang*, 763 N.W.2d 354, 358 (Minn. App. 2009). To that end, Midwest's apprehension of the defendants met a purpose of bail.

But by agreeing to act as a surety, a bond company undertakes to ensure that a defendant personally appears at hearings. *State v. Williams*, 568 N.W.2d 885, 888 (Minn. App. 1997), *review denied* (Minn. Nov. 18, 1997). And another purpose of bail is "to encourage sureties to voluntarily pay the penalty for failing to ensure the presence of the accused without requiring that the state undergo the expense of litigation to recover the defaulted bond amount." *Storkamp*, 656 N.W.2d at 542. Midwest presented no evidence showing the lengths to which it went to ensure that the defendants appeared at their hearings, and indeed both failed to appear. Midwest has not met its burden of proving that this factor favors reinstatement of the full bond amounts.

## 2. Willfulness or Bad Faith of the Defendant

A defendant's willfulness or bad faith is attributable to the surety. *Vang*, 763 N.W.2d at 358. Although no evidence was presented on the reasons that the defendants did not appear, the circumstances surrounding the missed appearances demonstrate willful behavior by the defendants.

Williams missed his sentencing hearing despite the district court setting it for a later date so that he could be in the community before going to prison. The district court stated that Williams specifically knew he had a court date. Ogris meanwhile absconded from the treatment facility personnel when he was being transported to Hennepin County Medical Center. These circumstances show willfulness by both defendants.

We do not agree with Midwest that this factor weighs in favor of reinstatement because both defendants were eventually returned to custody. Midwest has "put forth no evidence that defendant[s'] absence[s] at the scheduled appearances [were] anything but willful and unjustifiable," and therefore this factor weighs against reinstatement. *Id.*; *see also State v. Rodriguez*, 775 N.W.2d 907, 913 (Minn. App. 2009) ("There is no evidence as to the defendant's motives for leaving Minnesota, but his absence certainly appears willful."), *review denied* (Minn. Feb. 16, 2010); *Williams*, 568 N.W.2d at 888 (finding no abuse of discretion in denial of reinstatement in part because appellant presented no evidence that absence at hearing was anything but willful and unjustifiable).

## 3. Good Faith Efforts of the Surety

We agree with Midwest that the third factor—the good faith efforts of the surety to apprehend the defendants—weighs in favor of reinstatement. Both defendants were

eventually arrested because of Midwest's efforts. But this factor alone is not determinative. *See Williams*, 568 N.W.2d at 888 (finding no abuse of discretion in denying motion to reinstate bond even though surety assisted in apprehending defendant).

### 4. Prejudice to the State

"The general rule is that relief from forfeiture will not be granted where the prosecution has been deprived of proof by delay or has otherwise been adversely affected." *Shetsky*, 239 Minn. at 470, 60 N.W.2d at 45.

The state points to the defendants' criminal histories and the seriousness of their offenses in showing prejudice, and it also notes that it was prejudiced because it was delayed in obtaining a sentence in Williams's case. And the district court determined that prejudice to the state exists when a defendant does not appear. This prejudice weighs against reinstatement.

Midwest attempts to reframe the issue by claiming that the district court erred because it said that Williams did not show up for trial, when he actually did not appear for his sentencing hearing. But neither the statute requiring forfeiture nor caselaw suggests that prejudice can only exist when a defendant misses trial; instead, the focus is on the defendant's general failure to appear before the district court. *See* Minn. Stat. § 629.58 ("When a person in a criminal prosecution is under bond . . . *to appear* . . ." (emphasis added)); *see also Storkamp*, 656 N.W.2d at 541 ("If the defendant fails *to appear* and the bond goes into default, the court may forgive or reduce the penalty . . . ." (emphasis added)); *cf. Shetsky*, 239 Minn. at 474, 60 N.W.2d at 48 (noting that defendant's flight "thwarted the administration of justice"). Furthermore, this court has

found prejudice to the state when a defendant pleads guilty and does not attend the sentencing hearing as Williams did here. *See Vang*, 763 N.W.2d at 359.

Based on our examination of the *Shetsky* factors, we cannot say that the district court abused its discretion. Although some mitigating circumstances are present, they no doubt played a role in the district court's decision to reinstate ninety percent of the bonds in each case.

### C. Midwest's Other Arguments

Midwest also asserts that the district court erred because Minnesota General Rule of Practice 702 does not mandate a ten-percent penalty on reinstatement if the petition for reinstatement is filed within ninety days of the ordered forfeiture. Midwest is correct that this rule does not require a ten-percent penalty for a timely-filed petition. *See* Minn. R. Gen. Pract. 702(f) (requiring a minimum penalty of ten percent of forfeited bail if the petition to reinstate is filed between ninety and one hundred and eighty days after the order forfeiting bail).

Even though a penalty is not mandated by this rule, the decision to reinstate bail is within the discretion of the district court. *Storkamp*, 656 N.W.2d at 541. A district court may abuse its discretion if it bases its decision on an erroneous view of the law. *Id.* But nothing in the record suggests that the district court based its decision on the erroneous view that it was required to apply the ten-percent penalty. Instead, it based this decision on other considerations such as prejudice and the risks Midwest incurred by posting bonds on behalf of the defendants. Because the district court did not erroneously believe it had to apply a penalty, this argument fails.

9

Finally, Midwest claims that the district court erred because it said there should be a cost of doing business with defendants. But Midwest takes this statement out of context. The district court's statements about a cost of business were made in the context of the risks a bonding company takes when it posts bonds on behalf of defendants. The district court later clarified this statement: "I don't mean to punish your client. I do mean to say there was risk. The bond was set, the risk was that he wouldn't show up, and he didn't." This court has considered the risks a bonding company takes when reviewing bond reinstatement decisions. *See Rodriguez*, 775 N.W.2d at 913 (noting that a bonding company "assumed the risk" of searching for a defendant in its examination of the third *Shetsky* factor); *cf. State v. Due*, 427 N.W.2d 276, 278 (Minn. App. 2009) ("By accepting a premium and agreeing to act as surety, [the bonding company] undertook to ensure [the defendant] would personally appear to answer the charge against him. As such, [the bonding company] cannot absolve itself of blame when it did not monitor [the defendant's] appearances . . . ." (citation omitted)), *review denied* (Minn. Sept. 28, 1988). The district court's statements were not an erroneous view of the law, and this argument fails.

**Affirmed.**