*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1627**

State of Minnesota,
Respondent,

vs.

Kyle Adam Bruce,
Defendant,

Midwest Bonding, LLC,
Appellant.

**Filed March 23, 2026
Affirmed
Frisch, Chief Judge**

Stearns County District Court
File Nos. 73-CR-22-10486, 73-CR-22-10487, 73-CR-22-10488,
73-CR-22-10489, 73-CR-22-10490, 73-CR-22-10491, 73-CR-22-10492,
73-CR-22-10530, 73-CR-23-24, 73-CR-23-28

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Chief Deputy County Attorney, St. Cloud, Minnesota (for respondent)

James McGeeney, McGeeney Law Office, LLC, Rochester, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Frisch, Chief Judge; and Bentley, Judge.

**FRISCH**, Chief Judge

Appellant Midwest Bonding LLC (Midwest) challenges the district court's partial denial of its petition to reinstate and discharge a forfeited bail bond, arguing that the district court abused its discretion in weighing the factors regarding reinstatement. Because we discern no abuse of discretion by the district court, we affirm.

## FACTS

In late December 2022 and early January 2023, Kyle Adam Bruce was charged with ten offenses in ten different cases. Through Midwest, Bruce posted a $100,000 bail bond for all of the cases, and the district court authorized a conditional release, including the condition that he appear at future court hearings.

The district court scheduled a September 11, 2023 pretrial hearing for all of the cases and sent his attorney notice of the hearing. Bruce did not appear at the hearing. The following day, the district court issued a body-only warrant for Bruce and ordered that the bond would be forfeited in 60 days "if [Bruce] hasn't been turned into custody by the bonding company or has not voluntarily returned to custody." The district court directed court administration to "notify the bonding company of the non-appearance," and Midwest was sent notice of the September 12 order. When Bruce did not return to custody by November 17, the district court issued an order directing Midwest to pay the bond within 90 days. On January 4, 2024, the district court recalled the warrant after learning that Bruce had been apprehended and was in custody.

On February 4, Midwest petitioned the district court to reinstate and discharge the unpaid bond. Midwest submitted an affidavit from its vice president attesting that, on September 7, Midwest sent Bruce a reminder of the September 11 hearing via an automated voice-messaging system and that he "accepted notification." After Bruce failed to appear at the court hearing, Midwest "immediately" began "efforts to locate" him. It first tried to contact Bruce by phone and conducted "an electronic search of all the jails in Minnesota." It then hired "a professional fugitive recovery agency," which "conducted efforts to locate" Bruce, "including investigating the contact information collected at the time the Bond was posted, and investigative software to search for [him]." The affidavit noted that "[a]mid" the investigation, "it was revealed" that Bruce was in custody. The state filed no response to the petition.

The district court conducted a hearing, at which the state appeared but "took no position" on the petition. The district court thereafter issued an order addressing the four factors set forth by the supreme court in *Shetsky v. Hennepin County (In re Shetsky)*, 60 N.W.2d 40, 46 (Minn. 1953), and partially granted the petition, reinstating and discharging $50,000 of the $100,000 bond.

Midwest appeals.

## DECISION

We review a district court's denial of a petition to reinstate and discharge a forfeited bond for an abuse of discretion. *State v. Askland*, 784 N.W.2d 60, 62 (Minn. 2010). A district court abuses its discretion if it bases its decision on an erroneous view of the law, *id.*, or if it exercises its discretion in an arbitrary or capricious manner or makes clearly

3

erroneous factual findings, *see Nelson v. State*, 947 N.W.2d 31, 36 (Minn. 2020) (explaining abuse of discretion in postconviction context).

When a criminal defendant is released on a bond and fails to perform on the conditions of the bond, the amount of the bond is forfeited to the district court. Minn. Stat. § 629.58 (2024); *State v. Storkamp*, 656 N.W.2d 539, 541 (Minn. 2003). When a bail bond is forfeited, a district court "may forgive or reduce the penalty according to the circumstances of the case and the situation of the party on any terms and conditions it considers just and reasonable." Minn. Stat. § 629.59 (2024); *see also* Minn. Gen. R. Prac. 702(f) (addressing procedures for reinstatement of forfeited bond).

When determining whether to reinstate a forfeited bond, a district court must consider the four *Shetsky* factors. *Askland*, 784 N.W.2d at 62. First, the district court must consider "the purpose of bail, the civil nature of the proceedings, and the cause, purpose and length of a defendant's absence." *Id.* Bail serves multiple purposes: relieving a defendant and the state from the burdens of pretrial imprisonment by placing the defendant in the custody of the surety, which then assumes responsibility to "ensure the accused's presence at trial"; encouraging sureties to pay penalties when defendants fail to appear; and encouraging sureties "to locate, arrest, and return defaulting defendants to the authorities." *Storkamp*, 656 N.W.2d at 541-42. Second, the district court must consider "the good faith of the bond company as measured by the fault or willfulness of the defendant," *Askland*, 784 N.W.2d at 62, meaning that the "[d]efendant's willfulness or bad faith is attributable to the surety," *State v. Vang*, 763 N.W.2d 354, 358 (Minn. App. 2009). Third, the district court must consider "the good-faith efforts of the bond company to apprehend and produce

4

the defendant." *Askland*, 784 N.W.2d at 62.  Fourth, the district court must consider any prejudice to the state "in its administration of justice."  *Id.*  The petitioner bears the burden of proof to establish the first three factors, while the state bears the burden of proving prejudice.  *See Storkamp*, 656 N.W.2d at 542.  We address each factor in turn.

### *The Purpose of Bail; Civil Nature; Cause, Purpose & Length of Absence*

The district court found that the purpose of bail was "frustrated" because Midwest did not locate or return Bruce and did not voluntarily pay the penalty for failing to ensure his presence.  It determined that this factor weighs against reinstating the bond.

Midwest contends the district court abused its discretion in analyzing this factor because it "relie[d] exclusively on its conclusion that Bruce's failure to appear was intentional."  But the district court said nothing about whether Bruce's nonappearance was intentional in its discussion of this factor.  We likewise reject Midwest's assertion that it had no obligation to voluntarily pay the penalty to ensure Bruce's presence because bail is intended "to encourage sureties to voluntarily pay the penalty for failing to ensure the presence of the accused without requiring that the state undergo the expense of litigation to recover the defaulted bond amount."  *Id.*

Midwest also argues that the purpose of bail was satisfied because Bruce was absent for about three months and that we have "found the purpose of bail satisfied in cases with a similar period," citing *Askland*, 784 N.W.2d at 63, *Storkamp*, 656 N.W.2d at 543, and *Farsdale v. Martinez*, 586 N.W.2d 423, 425 (Minn. App. 1998).  We disagree with Midwest's characterization of our authorities.  None of these cases address whether the length of a defendant's absence favors or disfavors reinstatement of a forfeited bond.  And

5

none stand for the proposition that a district court abuses its discretion when it determines that the purpose of bail is frustrated when the surety fails to ensure the defendant's appearance, locate and return him, or voluntarily pay the bond. Because the district court expressly determined that the purpose of bail was frustrated in multiple respects, and the record supports its findings, we discern no abuse of discretion in its determination that the first *Shetsky* factor weighs against reinstatement.

### *Fault or Willfulness of the Defendant*

The district court found that Bruce "intentionally" failed to appear because notice of the hearing was mailed to his attorney, there is no evidence that the notice was undeliverable or that Bruce was unaware of the hearing, and Midwest did not present any evidence that Bruce's absence was justified. The district court weighed this factor against reinstatement.

The petitioner bears the burden of demonstrating that this factor favors reinstatement of the forfeited bond. *Storkamp*, 656 N.W.2d at 542. Midwest did not present any evidence that Bruce was unaware of the hearing or otherwise justified in his absence. Midwest therefore failed to meet its burden to establish that this factor favors reinstatement. Midwest argues that the notice sent to Bruce's attorney does not support a finding that he actually knew of the hearing and willfully absented himself. But it cites no authority for this proposition, which otherwise disregards its burden of proof. We therefore conclude that the district court did not abuse its discretion by weighing this favor against reinstatement.

6

*Bond Company's Good-Faith Efforts*

The district court found that Midwest presented "insufficient evidence" that it made good-faith efforts to locate Bruce. The district court noted the information Midwest provided about its efforts before the hearing date to ensure Bruce's appearance but highlighted numerous information gaps about Midwest's efforts to find him after he failed to appear. In particular, the district court noted that Midwest provided only "boilerplate" descriptions of its efforts, using "language previously submitted verbatim in other matters"—never referencing Bruce by name, never naming the fugitive recovery agency it hired or identifying when it hired the agency, and never identifying or describing the investigative software that the agency used. And the district court noted that it was the sheriff's office that arrested Bruce, without any apparent contribution or assistance from Midwest. The district court determined that this factor "weighs heavily against reinstatement."

Midwest contends the district court abused its discretion by weighing this factor against reinstatement. Midwest first argues that the district court improperly mentioned its prehearing efforts, saying that it is not required to make any such efforts. We disagree with Midwest's characterization of the district court's order. The district court's brief discussion of these efforts merely recounted information that Midwest chose to provide and was consistent with Midwest's responsibility as surety to "ensure the accused's presence." *See Storkamp*, 656 N.W.2d at 541. Regarding Midwest's efforts to locate Bruce after his nonappearance, Midwest seeks to minimize the duration of Bruce's absence. But the record confirms that the district court sent Midwest notice of Bruce's absence the day after

7

the missed hearing, and Bruce was not returned to custody until more than three months later, and only then through the efforts of the sheriff's office. Midwest also acknowledges the lack of "specifics" in its affidavit but contends this "does not overcome [its] good faith efforts." We disagree. It is Midwest's burden to show that it made good-faith efforts. *Id.* at 542. In light of Midwest's vague, generic descriptions of its recovery efforts, we discern no abuse of discretion in the district court's determination that Midwest failed to satisfy that burden and, consequently, that this factor weighs heavily against reinstatement.

### *Prejudice to the State*

The district court noted that the state did not respond to Midwest's petition. It added that Bruce's failure to appear delayed the administration of justice and closure for the victims of his ten alleged offenses. The district court determined that this factor "does not weigh strongly in favor of or against reinstatement."

Midwest emphasizes that the state did not argue that it was prejudiced and contends the district court's statements about delaying the administration of justice and closure for victims are unsupported by the record, particularly because the matters resolved relatively quickly after Bruce was apprehended. It argues that the prejudice factor should weigh in favor of reinstatement. We are not persuaded. While this factor weighs against reinstatement if the state demonstrates prejudice, *Askland*, 784 N.W.2d at 63, Midwest identifies no authority for the proposition that the factor affirmatively favors reinstatement if the state does not claim prejudice. Even if the district court's findings regarding prejudice are improper, any error is harmless because the district court treated this factor as neutral. And because the district court affirmatively considered the circumstances of

8

this case and exercised its discretion to return half of the posted bond to Midwest, any error in its evaluation of this factor does not appear to have influenced the district court's ultimate decision regarding reinstatement. *See* Minn. R. Civ. P. 61 (directing courts to "disregard any error" that does not affect a party's substantial rights); *Palladium Holdings, LLC v. Zuni Mortg. Loan Tr. 2006-OA1*, 775 N.W.2d 168, 178 (Minn. App. 2009) ("An appealing party bears the burden of demonstrating both error and prejudice."), *rev. denied* (Minn. Jan. 27, 2010).

In sum, because the record supports the district court's determination that three *Shetsky* factors weigh against reinstatement—one "heavily" so—and the fourth is neutral, we conclude that the district court did not abuse its discretion by reinstating half of the bond amount.

**Affirmed.**