2008-NMCA-055

182 P.3d 834

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Ismael PACHECO, Defendant,**

and

**Richard Gonzagowski d/b/a A–Affordable Bail Bonds, Surety–Appellant.**

**No. 27,255.**

Court of Appeals of New Mexico.

March 12, 2008.

Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellee.

Trace L. Rabern, Attorney and Counselor at Law LLC, Trace L. Rabern, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Surety A–Affordable Bail Bonds (A–Affordable) appeals from a judgment of the district court forfeiting the bond that A–Affordable posted on behalf of Defendant Ismael Pacheco. A–Affordable argues that the district court (1) failed to provide notice of forfeiture as required by statute, (2) abused its discretion in ordering forfeiture of the bond, and (3) entered inconsistent findings on the relationship between A–Affordable and Amigo Bail Bonds (Amigo). We affirm.

## BACKGROUND

{2} The issues in this case arise from the relationship between two bonding companies in connection with one bond securing Defendant's appearance and from the notice provided to the companies when Defendant failed to appear for trial. On October 7, 2004, Defendant was indicted in Sandoval County on several felony counts. At Defendant's arraignment, the district court set bond at $100,000, to be posted via ten percent cash or corporate surety.

{3} Defendant's wife and his father-in-law, who was also Defendant's employer, went to Amigo on November 9, 2004, seeking bail bonding services. Defendant's family filled out an application for bail and contract with Amigo, paid a premium to Amigo, and conveyed a mortgage to a piece of real property in Colorado to secure the bond. However, Amigo was not licensed to offer bail bonds in Sandoval County, so as a "professional favor," A–Affordable posted bond for Defendant on behalf of Amigo. Amigo and A–Affordable entered into a "hold-harmless" agreement, whereby A–Affordable secured a letter of credit from a bank for $10,000, and Amigo held the mortgage on the property with the right of foreclosure.

{4} A–Affordable posted bond on November 12, 2004, bearing the name "A–Affordable," and the district court issued a receipt for $100,000. The day before trial, December 5, 2005, Defendant was present at a hearing on his motions to suppress. The

trial was scheduled to begin the next day, Tuesday, December 6, 2005, but Defendant failed to appear, and the district court issued a bench warrant. Two days later, on Thursday, December 8, 2005, the district court filed a notice of forfeiture and order to show cause, ordering Defendant and A–Affordable to appear for a hearing on Tuesday, December 13, 2005, to show cause why judgment in the amount of the bond should not be entered against them. The notice that was filed with the court clerk directed the clerk to mail the notice to A–Affordable "forthwith." A–Affordable received the notice on December 14, 2005, the day after the scheduled hearing. The postmark on the mailed notice was December 13, 2005.

{5} Neither A–Affordable nor counsel representing it appeared at the December 13 hearing. However, Gary Gutierrez, Amigo's principal, announced his appearance for A–Affordable when the district court called the case. Gutierrez addressed the district court, discussed the steps he had taken to find Defendant, and requested that the court give him thirty days to find Defendant. The district court stated that it would not enter judgment for thirty days, thereby giving Gutierrez additional time to apprehend Defendant. If Defendant was apprehended in that time, the district court would reconsider the forfeiture of the bond. But if Defendant was not in custody at the end of the thirty days, the court would enter the judgment. The district court set a hearing for January 13, 2006, and notice of that hearing was faxed to A–Affordable on December 13, 2006.

{6} At the January 13 hearing, Gutierrez again appeared for A–Affordable, with no mention to the district court of the relationship between Amigo and A–Affordable. Despite having received notice, no one actually affiliated with A–Affordable appeared at the hearing. Gutierrez had not been able to locate Defendant, and he requested yet another thirty days in which to find Defendant. The district court said it would issue judgment forfeiting the bond for the full $100,000, but again, it announced that it would not sign the judgment for another thirty days. The district court stated that if Defendant was not in custody within the thirty days, the

court would not hold another hearing, it would sign the judgment and send a copy to A–Affordable, and A–Affordable would be liable for the judgment ten days later.

{7} Defendant was never found, and on June 29, 2006, over six months after the trial date, the district court entered a judgment of forfeiture, which ordered A–Affordable to pay $100,000 by July 7, 2006. A–Affordable did not pay the judgment, and sometime after that, the Thirteenth Judicial District Court refused to allow A–Affordable to do business in cases pending in the district.

{8} In September 2006, attorney Ken Neundorf filed an entry of appearance and motion to stay on behalf of A–Affordable, the "[s]urety of record," and Amigo, the "responsible surety." In the motion, Neundorf explained the agreement between Amigo and A–Affordable to the court, Amigo's attempts to locate and apprehend Defendant, Amigo's steps toward foreclosure on the bond's collateral, and asked the district court to stay the judgment to allow A–Affordable to remain in business and to permit Amigo to continue to look for Defendant.

{9} The district court held a hearing on the motion to stay on September 22, 2006, at which Neundorf explained the relationship between Amigo and A–Affordable and the efforts in progress by Gutierrez and Amigo. Gutierrez offered to put $5,000 in the court registry immediately and asked the court revisit the issue within a few months, at which time Gutierrez could essentially continue to pay the bond down little by little if Defendant remained at large. Amigo offered this solution in exchange for the district court's permitting A–Affordable to write bonds. The assistant district attorney (ADA) argued that Amigo lacked standing and that A–Affordable was the surety of record in default. The ADA further argued that Neundorf could not represent both Amigo and A–Affordable because he would have a conflict of interest. The district court agreed that because the bond was written by A–Affordable, the matter should not proceed without A–Affordable's representative, and it observed that Neundorf may "find [himself] in a conflict."

{10} Subsequently, on October 11, 2006, Attorney James Bierly entered an appearance on behalf of A–Affordable and filed a motion for relief from judgment on bond forfeiture. In the motion, A–Affordable asked the district court to set aside the judgment against it because A–Affordable claimed it did not receive statutory notice. On October 19, 2006, the district court held a hearing on A–Affordable's motion at which separate counsel for A–Affordable was present. Amigo was also present and represented by counsel at the hearing, and the State again objected to Amigo's presence on the ground that it lacked standing. A–Affordable raised several concerns at the hearing, including the fact that the district court had not complied with the four-day notice requirements in NMSA 1978, § 31–3–2 (1993). The district court noted that the notice for the hearing to show cause was filed with the court clerk on December 8, 2005, and pursuant to statute, that the clerk is designated as the surety's agent to receive notice. Counsel for A–Affordable agreed that the clerk was its agent, but A–Affordable argued that the clerk did not mail the notice "forthwith," as required by statute, resulting in A–Affordable's not receiving the notice until the day after the hearing. The district court decided to continue the hearing for thirty more days, giving A–Affordable more time to find Defendant.

{11} On November 2, 2006, the district court held another hearing and explained that it was concerned only with the bond in Defendant's case, not A–Affordable's bonding capacity in general. A–Affordable argued that the district court did not follow the statutory notice requirements, citing the fact that notice was mailed to A–Affordable on the same day that the initial show-cause hearing was scheduled. The district court inquired as to the relief A–Affordable was seeking, to which A–Affordable replied that A–Affordable wanted the court to follow the statutory procedures.

{12} The district court made several findings including: (1) Amigo lacked standing, (2) Defendant failed to appear on December 6 and the court issued a bench warrant on that same day, (3) notice of forfeiture was sent out on December 8 for a December 13 hearing, and (4) Gutierrez appeared at the December 13 hearing on behalf of Amigo and A–Affordable. The district court, concerned with A–Affordable's challenge based on notice, decided to remove the June 2006 judgment of forfeiture, giving A–Affordable more time and another formal hearing on the forfeiture. The district court stated that it did not think more time would make any difference in locating Defendant, but that if Defendant was not in custody at the next hearing, the district court would re-issue the judgment.

{13} On December 6, 2006, one year exactly after Defendant first failed to appear and the bench warrant was issued, the district court re-issued judgment against A–Affordable forfeiting the bond. The district court stated that any dispute between Amigo and A–Affordable was a private matter between them. In a written order filed December 7, 2006, the district court found that Defendant remained at large because A–Affordable had failed to procure Defendant's presence, and that A–Affordable's efforts did "not warrant setting aside" the judgment. A–Affordable appeals the judgment.

{14} On appeal, A–Affordable raises three points of error. First, A–Affordable argues that the district court's failure to follow statutory procedures was reversible error. Second, it contends that the district court considered improper factors in deciding to forfeit the bond. Third, A–Affordable seems to argue that the district court's refusal to consider the private agreement between Amigo and A–Affordable constitutes reversible error.

## I. The District Court Followed Statutory Procedures Forfeiting the Bond

{15} A–Affordable first argues that the district court failed to follow the procedures outlined in Section 31–3–2 and thereby denied A–Affordable notice of the forfeiture proceedings against it. A–Affordable's argument requires us to interpret Section 31–3–2, which is a question of law that we review de novo. *State v. Romero*, 2006–NMCA–126, ¶ 5, 140 N.M. 524, 143 P.3d 763, *aff'd by*, 2007–NMSC–030, 141 N.M. 733, 160 P.3d

914. We interpret a statute by looking at the plain meaning of the language of the statute to effectuate the intent of the legislature. *State v. Tave,* 2007–NMCA–059, ¶ 11, 141 N.M. 571, 158 P.3d 1014, *cert. denied,* 2007–NMCERT–005, 141 N.M. 762, 161 P.3d 259. "According to the plain meaning rule, [w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (internal quotation marks and citation omitted) (alteration in original).

{16} Section 31–3–2 provides in part:

B. Whenever a person fails to appear at the time and place fixed by the terms of his bail bond, the court:

(1) may issue a warrant for his arrest; and

(2) may declare a forfeiture of the bail. If the court declares a forfeiture, it shall:

(a) declare such forfeiture at the time of nonappearance;

(b) give written notice thereof to the surety within four working days of declaration; and

(c) issue a bench warrant for the person's arrest.

. . . .

E. Notice of the motion to enter a judgment of default may be served pursuant to the rules of criminal procedure or may be served on the clerk of the court, who shall forthwith mail copies to the obligors at their last known address. The notice shall require the sureties to appear on or before a given date and show cause why judgment shall not be entered against them for the amount of the bail bond or recognizance. If good cause is not shown, the court may then enter judgment against the obligors on the recognizance, for such sum as it sees fit, not exceeding the penalty fixed by the bail bond or recognizance. § 31–3–2.

{17} A–Affordable's specific argument is that the district court failed to comply with the four-day written notice requirement in Section 31–3–2(B)(2)(b). A–Affordable conceded that notice was "completed on the second or third day," but because it was not postmarked until December 13 or received by A–Affordable until December 14, it was nonetheless untimely. A–Affordable contends that timely notice was essential, and that lack thereof prevented A–Affordable from apprehending Defendant. A–Affordable argues that the appropriate remedy for the district court's violation of the four-day rule is for this Court to reverse the judgment of forfeiture.

{18} Contrary to A–Affordable's argument, we read Section 32–3–2(B) and (E) as addressing two separate events. First, if a district court decides that a bond is subject to forfeiture, it must first declare a forfeiture pursuant to Subsection (B)(2). The district court must give written notice of the declaration to the surety within four working days in accordance with Subsection (B)(2)(b). Second, once a district court has declared forfeiture, it may proceed to enter default judgment under Subsection (E). The district court must give the surety notice of its intent to enter judgment in the amount of the bond and hold a hearing to allow the surety to show cause why such a judgment should not be entered against the surety. § 31–3–2(E). Thus, the statute requires the district court to serve the surety with two notices—one notice of the declaration of forfeiture and another notice of the show-cause hearing. In this case, the district court appears to have combined the two notices in one document entitled "Notice of Forfeiture and Order to Show Cause."

{19} We first consider whether notice to A–Affordable of the district court's declaration of forfeiture was timely. NMSA 1978, § 12–2A–7(A) (1997), provides that for purposes of computing time in a statute, "the first day of the period is *excluded* and the last day is *included.*" (Emphasis added.) These statutory requirements "are deemed to be incorporated into the bond." *State v. Valles,* 2004–NMCA–118, ¶ 11, 140 N.M. 458, 143 P.3d 496.

{20} In this case, the district court issued a warrant for Defendant's arrest on Tuesday, December 6, 2005, when Defendant failed to appear for trial. Two days later, on Thurs-

day, December 8, the district court issued notice to A–Affordable declaring that bail had been forfeited because of Defendant's failure to appear and ordered A–Affordable to appear and show cause on December 13. According to Section 12–2A–7(A), the first day, Thursday, does not count in the calculus of the four days. Friday, December 9, was day one; Monday, December 12, was day two; and Wednesday, December 14, the day A–Affordable admits it received the notice, was day four. Thus, the district court provided A–Affordable with notice of the declaration of forfeiture within the four days required by Section 31–3–2(B)(2)(b).

{21} Admittedly, A–Affordable did not receive notice of the December 13 hearing until December 14. To the extent that A–Affordable argues that it did not receive timely notice under Section 32–3–2(E) of the district court's intention to enter judgment of forfeiture, this does not constitute grounds for reversal in light of the circumstances in this case. At the show-cause hearing on December 13, the district court gave A–Affordable, by way of Gutierrez's appearance on behalf of A–Affordable, thirty more days to find Defendant. The district court did not enter judgment forfeiting the bond at that time. In addition, on December 13 the court clerk faxed notice to A–Affordable of a hearing on "Forfeiture (Entry of Judgment)" scheduled for January 13, 2006. A–Affordable does not contend that it did not receive this notice. For all practical purposes, the January 13 hearing was a new show-cause hearing. Yet A–Affordable chose not to attend that hearing. Furthermore, the district court did not enter judgment of forfeiture until six months later, in June 2006. Even after judgment was entered, the district court conducted three more hearings on various motions, at which hearings A–Affordable appeared and argued for stay and/or reconsideration of the judgment. Indeed, at the November 2, 2006 hearing, the district court removed the June 2006 judgment of forfeiture and allowed A–Affordable additional time to locate Defendant. The district court did not enter final judgment of forfeiture until December 6, 2006—a full year after Defendant failed to appear. In light of these facts, A–Affordable cannot demonstrate that it was prejudiced by the fact that it did not receive timely notice of the first hearing. *State v. Fernandez*, 117 N.M. 673, 676, 875 P.2d 1104, 1107 (Ct.App.1994) ("In the absence of prejudice, there is no reversible error.").

{22} Based on these facts, we conclude that there were no violations of the statutory procedure. The district court declared a forfeiture and provided A–Affordable with notice within the four-day period required by Section 31–3–2(B)(2)(b), and A–Affordable had notice and several opportunities to be heard on its arguments against entry of the judgment of forfeiture.

## II. The District Court Considered Proper Factors and Did Not Abuse Its Discretion in Forfeiting the Bond

{23} A–Affordable argues that the district court erroneously decided to enter judgment forfeiting the bond. Specifically, A–Affordable contends that the district court focused on A–Affordable's business practices, rather than on the efforts made by A–Affordable to locate and apprehend Defendant and on the allegedly untimely notice.

{24} In the event that a defendant fails to appear, Section 31–3–2 gives the district court discretion to forfeit the bond. § 31–3–2(B)(2) (stating that the court "may declare a forfeiture of the bail"). "[I]f it appears that justice does not require the enforcement of the forfeiture," however, the district court "may direct that a forfeiture be set aside." § 31–3–2(C).

{25} The word "may" indicates that the district court has discretion, but is not required, to declare a forfeiture. *See Bursum v. Bursum*, 2004–NMCA–133, ¶ 17, 136 N.M. 584, 102 P.3d 651. Because the decision to forfeit a bond is discretionary, we review the district court's decision for abuse of that discretion. "A trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances, or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances." *State v. Soto*, 2007–NMCA–077, ¶ 10, 142 N.M. 32, 162 P.3d 187 (internal

quotation marks and citations omitted), *cert. denied*, 2007–NMCERT–006, 142 N.M. 15, 162 P.3d 170.

{26} In considering whether the district court abused its discretion, we turn to *State v. Amador*, in which our Supreme Court examined "the purposes of the bail bond and the actions of the bondsman to determine whether the court abused its discretion." 98 N.M. 270, 273, 648 P.2d 309, 312 (1982).

> The purpose of the bond ... is to secure a trial, its object being to combine the administration of justice with the convenience of a person accused, but not proved, to be guilty. If the accused does not appear the bail may be forfeited, not as a punishment to the surety or to enrich the Treasury of the State, but as an incentive to have the accused return or be returned to the jurisdiction of the court.

*Id.*

{27} The Supreme Court in *Amador* held that the district court abused its discretion in ordering forfeiture of the bond because the bondsman had located the defendant, who was incarcerated in Texas at the time of trial, filed a detainer with the authorities in Texas, and offered to pay the extradition and transportation costs. *Id.* at 271, 274, 648 P.2d at 310, 313. The Court noted that "it is unjust to enrich the state treasury when a bondsman has been diligent in his efforts to apprehend and bring back for trial a defendant but has been thwarted by the actions of another sovereign jurisdiction." *Id.* at 274, 648 P.2d at 313.

{28} Unlike the situation in *Amador*, in the present case Defendant is not in custody in another jurisdiction, nor was he in custody at the time he was scheduled for trial. *See State v. United Bonding Ins. Co.*, 81 N.M. 154, 158, 464 P.2d 884, 888 (1970) (affirming forfeiture of bond where the defendant failed to appear and was at large during part of the time the writs of commitment were outstanding). He failed to appear for trial on December 6, 2005, and is still at large. It was not until one year later, December 6, 2006, after six hearings, at the last three of which A–Affordable itself was present, that the district court entered a judgment ordering forfeiture. The district court entertained A–Affordable's motion to reconsider forfeiture in October 2006, giving A–Affordable two more months to locate and apprehend Defendant. We fail to see how the district court, in considering A–Affordable's motion to reconsider and giving A–Affordable one year from the failure to appear, abused its discretion in entering judgment on forfeiture of the bond.

{29} A–Affordable, citing a Georgia appellate case, *Raburn Bonding Co. v. State*, 244 Ga.App. 386, 535 S.E.2d 763, 764 (2000), argues that the appropriate measure of whether the district court should order forfeiture turns on whether the surety "acted with due diligence and used all practical means to secure the attendance of the [accused] before the court." As explained above, this is not the test in New Mexico because forfeiture is within the district court's discretion. A–Affordable overlooks the fact that the Georgia statute governing forfeiture carves out an exception for "due diligence," *see* Ga.Code Ann. § 17–6–31(d)(2)(B) (1997), whereas the New Mexico statute does not. *See* § 31–3–2(F) (requiring the court to "remit" the forfeited judgment amount if the defendant is surrendered to the proper court). The language in the Georgia case has no relevance to the present case.

{30} A–Affordable also argues that the district court in this case considered inappropriate factors, such as A–Affordable's business practices. This is not supported by the record. At the November 2, 2006 hearing on A–Affordable's motion to reconsider the judgment, the district court told the parties that it was not considering the issue of whether it was Amigo or A–Affordable that had bonding capacity because the court understood that this issue was the subject of another proceeding before another district court judge. The district court stated that in this particular case it was only considering the issue of the bond, which was in fact issued by A–Affordable, and proceeded to hear legal argument on the procedural issue of notice.

{31} We hold that, under the circumstances of this case, the district court did not

abuse its discretion in entering judgment of forfeiture. The district court's judgment was neither against the "logic and effect of the facts and circumstances," nor was it "contrary to the reasonable, probable, and actual deductions ... drawn from the facts and circumstances" in this case. *Soto*, 2007–NMCA–077, ¶ 10, 142 N.M. 32, 162 P.3d 187 (internal quotation marks and citation omitted).

### III. The District Court Did Not Err in Refusing to Consider the Private Agreement Between Amigo and A–Affordable

{32} A–Affordable's third argument seems to be that the district court erred in refusing to consider the hold-harmless agreement between Amigo and A–Affordable. As part of this argument, A–Affordable contends that the district court's ruling that Amigo lacked standing was inconsistent with its finding that Gutierrez acted as agent for A–Affordable for purposes of notice.

{33} At the November 2 hearing, the district court found that Gutierrez appeared at the December 13 hearing on behalf of Amigo and A–Affordable. The district court also ruled that Amigo did not have standing in the current case. A–Affordable constructs a dizzying argument that these two findings are inconsistent and that, therefore, one finding is "unreasonable." We are not persuaded.

{34} First, we note that A–Affordable cites to no authority to support its argument. "[I]ssues raised in appellate briefs that are unsupported by cited authority will not be reviewed ... on appeal." *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998–NMCA–078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (internal quotation marks and citation omitted).

{35} Second, this Court does not understand how objecting to the allegedly inconsistent rulings supports A–Affordable's position that this Court should reverse the judgment of forfeiture. As we understand A–Affordable's argument, A–Affordable does not appear to challenge the finding of the district court that Gutierrez was acting as A–Affordable's agent when he appeared at the December 13 hearing. Rather, A–Affordable appears to contend that the district court should have considered the "hold harmless agreement" between Amigo and A–Affordable in deciding whether to enter judgment of forfeiture against A–Affordable.

{36} We fail to see how the district court committed reversible error in refusing to consider the private agreement between Amigo and A–Affordable. A–Affordable posted the bond on behalf of Defendant in this case and thereby submitted itself to the jurisdiction of the court. "If the defendant does not appear ..., the surety becomes the absolute debtor of the state for the amount of the bond." *Valles*, 2004–NMCA–118, ¶ 10, 143 P.3d 496. Amigo's name is not listed on the bond. It appears that the dispute between Amigo and A–Affordable over the hold-harmless agreement is properly the subject of a separate action, not of this forfeiture action.

### CONCLUSION

{37} Based on the foregoing reasons, we affirm the district court.

{38} **IT IS SO ORDERED.**

WE CONCUR: RODERICK T. KENNEDY and MICHAEL E. VIGIL, Judges.