This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

  **Plaintiff-Appellee,**

**v.**             **No. 34,754**

**SERINA AGUILERA,**

  **Defendant,**

**and**

**TIMOTHY YOUNG,**

  **Surety-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. Delaney, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Kennedy Kennedy & Ives, LLC
Joseph P. Kennedy
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}	Timothy Young (Surety) appeals the forfeiture of $25,000 he had posted as a cash bond on behalf of Defendant Serina Aguilera. When released, Aguilera absconded to Mexico, and while there violated a condition of release that required her to attend an August 18, 2014 hearing in district court. The district court issued a default judgment on April 21, 2015, ordering that the bond be forfeited.

{2}	On appeal, Surety challenges only whether the district court properly forfeited the $25,000 cash bond that Surety posted. Following the completion of briefing, this Court issued an order of limited remand *sua sponte* on October 3, 2016. The order stated that the parties' "interpretation[s] of the underlying facts in the case [are] starkly different," and instructed the district court to enter "detailed findings of fact" based on only "the existing record[.]" On October 24, 2016, the district court filed its findings of fact on bail forfeiture [and] default judgment. We now affirm.

**FACTS AND BACKGROUND**

{3}	Aguilera was initially arrested pursuant to a warrant stemming from a criminal information that charged her with aggravated battery, aggravated assault, and possession of a firearm or destructive device by a felon. Surety posted the $25,000 cash bond for her release. Thereafter, Aguilera apparently "fled" to Mexico. While in

Mexico, Aguilera failed to appear for a scheduled court hearing on August 18, 2014, which resulted in the issuance of a bench warrant for her arrest. Thereafter, Surety apparently traveled to Mexico to convince Aguilera to return to the United States. On September 24, 2014, upon reentry to the United States, authorities detained both Aguilera and Surety at the Columbus, New Mexico, port of entry for reasons unrelated to her case in district court. Afterward, Aguilera remained in custody, and as a result missed additional court hearings.

{4}     On December 5, 2014, on the State's motion, but possibly then without knowledge of Aguilera's detainment, the district court entered a notice of forfeiture and order to show cause, which stated that should Aguilera fail to appear at a January 22, 2015 hearing, a default judgment would be entered ordering that the bond be forfeited. On January 29, 2015, the district court entered another notice of forfeiture and order to show cause, this time serving both Surety and Aguilera, stating that in order to avoid a default judgment Surety and Aguilera were required to attend a rescheduled hearing on February 9, 2015. Shortly thereafter, Surety, through counsel, filed a motion to release the bond, explaining that Aguilera had been arrested and in custody since September 24, 2014. The bond forfeiture hearing was nonetheless held on February 9, 2015. On April 21, 2015, default judgment on the cash bond was entered, stating that Aguilera had "failed to appear" in violation of her signed

3

condition of release agreeing that she "would appear at such times and places as may be required by [the district] court." The district court also concluded that Aguilera was not "surrendered into custody[,] and good cause [was] not . . . shown [as to] why default judgment should not be entered." Ultimately, Aguilera was returned to the jurisdiction of the district court where she entered into a repeat offender plea and disposition agreement on March 4, 2015, and an amended plea and disposition agreement on May 4, 2015.

{5}     Briefing by Surety and the State painst two completely different pictures of Aguilera's return from Mexico. While Surety concedes that he and Aguilera were both detained upon their reentry into the United States at the Columbus, New Mexico, port of entry, and that Aguilera was discovered to be "traveling with false documents[,]" he maintains that "by traveling back from Mexico into New Mexico [Surety] effectively surrendered Aguilera into custody." The State, on the other hand, cites to the record from the February 9, 2015 show cause hearing, and accuses Surety of being complicit in Aguilera's then-ongoing effort *not* to be taken into custody. Specifically, the State maintains that Surety first "crossed into Mexico alone with a stolen I.D." and then "accompanied Aguilera the next day when authorities caught Aguilera using the same stolen I.D. to re-enter from Mexico through the port of entry." Indeed, the Luna County Sheriff's Department Criminal Investigator Michael Brown participated in the

4

investigation of Surety and Aguilera, and "charged . . . Aguilera with concealing identity and identity theft and charged [Surety] . . . with identity theft[,] and aiding or harboring a felon." Additionally, the State argues that whatever happened or did not happen regarding Aguilera's return, based upon her prior "undisputed breach of the bond condition, the district court did not improperly declare that the bail had been forfeited."

{6}     On limited remand, the district court provided factual findings that both explain the basis for its bond revocation and support the State's version of the facts. Initially, the court observed that Surety "provide[d no] evidence at the hearing; for example, he did not testify or provide any witnesses." Regarding the State's evidence, the district court found that Mr. Brown's uncontradicted testimony established that "[w]hen [Surety] entered Mexico, [he] had a New Mexico [d]river's [l]icense belonging to [another woman, which] had previously been reported as stolen." The district court also found that when Aguilera "attempted to cross into the United States from Mexico[,] . . . [she] tried to use [the other woman's stolen] driver's license[.]" Following the bond forfeiture hearing, the district court reiterated: "If [Surety's] real intent was to turn [Aguilera] over to authorities, then that's what would have been done . . . at the port of entry." The court found instead that Aguilera "attempt[ed] to enter as opposed to surrender[] herself[.]"

**DISCUSSION**

{7}    Surety appeals, primarily claiming that the district court misapplied the law of bond forfeiture because "Aguilera was placed in custody prior to the [district] court's default judgment" forfeiting Surety's bond. Disputing the contention that he was helping Aguilera elude authorities, Surety argues that the "more likely explanation for [Surety's] presence at the border" was that he was "accompanying Aguilera back to New Mexico to fulfill his duties as a bondsman." He contends that Aguilera's arrest was due to the fact that he surrendered her into custody. Surety secondarily contends that the State "failed to produce any evidence regarding the bail contract between [Surety] and the State."

{8}    In the context of a district court's order revoking bond, our Supreme Court has employed an abuse of discretion standard of review. *See State v. Amador*, 1982-NMSC-083, ¶ 16, 98 N.M. 270, 648 P.2d 309 (concluding under the circumstances before it that "it was an abuse of discretion for the trial court to order the total forfeiture of the bond"). "A [district] court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances, or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances." *State v. Pacheco*, 2008-NMCA-055, ¶ 25, 143 N.M. 851, 182 P.3d 834 (concluding that the "word 'may' indicates that the district court

6

has discretion, but is not required, to declare a bond forfeiture"). A district court's findings of fact are generally reviewed for substantial evidence. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**{9}** Rule 5-406(C) NMRA states that "[i]f there is a breach of condition of a bond, the court *may* declare a forfeiture of the bail." (Emphasis added.) Similarly, NMSA 1978, Section 31-3-2(B)(2) (1993), states that, if a person "fails to appear at the time and place fixed by the terms of his bail bond, the court . . . *may* declare a forfeiture of the bail." (Emphasis added.) Not dissimilar to the discretionary language regarding forfeiture of bonds in circumstances of breach, Rule 5-406(D) similarly states that the court *may* set aside the forfeiture upon a showing of good cause or if the defendant is surrendered by the surety into custody prior to the entry of a judgment of default on the bond. However, Section 31-3-2(F) rids the court of discretion in one specific circumstance, requiring that,

> [w]hen a judgment has been rendered against the defendant or surety for the whole or part of the penalty of a forfeited recognizance, the court rendering such judgment *shall* remit the amount thereof when, after such rendition, the accused has been arrested and surrendered to the proper court to be tried on such charge or to answer the judgment of the court, *provided that the apprehension of the accused in some way was aided by the surety's efforts or by information supplied by the surety.*

(Emphases added.)

**{10}** Surety relies heavily on *Amador*, a 1982 case in which our Supreme Court declared that "[c]onsidering the purposes of bail and the policy to encourage bondsmen to enter into bail contracts, it is unjust to enrich the state treasury when a bondsman has been diligent in his efforts to apprehend and bring back for trial a defendant but has been thwarted by the actions of another sovereign jurisdiction." 1982-NMSC-083, ¶ 14. The court in *Amador* held that because "[t]he bondsman did all he could to secure the defendant's presence and insure the state against its monetary loss" and because "[t]he [s]tate [was] not unduly prejudiced by the defendant's failure to appear because he [could have been] returned to New Mexico for trial once he [was] released[,] . . . justice [did] not require the forfeiture of the entire amount of the bond [and] . . . it was an abuse of discretion for the [district] court to order the total forfeiture of the bond." *Id.* ¶¶ 15-16. Thus, although Rule 5-406 utilizes language that is discretionary, *Amador* limits the district court's discretion in circumstances where a bondsman exerts sufficient efforts, but the defendant is unable to appear for court due to the defendant being held by another jurisdiction, in which case the bond *should be* returned. *See* 1982-NMSC-083, ¶ 14. This language is not dissimilar to the guiding inquiry set forth in the mandatorily worded Section 31-3-2(F), which in this instance would operate to foreclose forfeiture if Aguilera's

8

apprehension was "aided by [Surety's] efforts or by information supplied by [Surety]." *Id.*

{11}     Unlike the defendant in *Amador*, Aguilera was not already in custody when she missed the first hearing—she was, apparently, by then in Mexico. Indeed, *Amador* was addressed by this Court in *Pacheco*, where we stated that, "[u]nlike the situation in *Amador*, in the present case [the d]efendant is not in custody in another jurisdiction, nor was he in custody at the time he was scheduled for trial." *Pacheco*, 2008-NMCA-055, ¶ 28. We explained:

> [the defendant] failed to appear for trial . . . and [was] still at large. It was not until one year later, . . . after six hearings, at the last three of which [the surety] itself was present, that the district court entered a judgment ordering forfeiture. The district court entertained [the surety]'s motion to reconsider forfeiture[,] . . . giving [the surety] two more months to locate and apprehend [the d]efendant. We fail to see how the district court, in considering [the surety]'s motion to reconsider and giving [the surety] one year from the failure to appear, abused its discretion in entering judgment on forfeiture of the bond.

*Id.* Although dissimilar in some factual respects, like in *Pacheco* Aguilera was not yet arrested and could be deemed to have been "at large" when she missed her first court appearance.

{12}     But our inquiry here is guided by facts quite different from those in *Amador* and *Pacheco*. That is because other than being present with Aguilera when she was arrested, Surety was more an impediment to her surrender than a facilitator of it.

9

Uncontradicted evidence in the record—presented by the State and which supported the default judgment issued by the district court and formed the basis of its ensuing findings of fact—was that Surety carried a stolen New Mexico driver's license to Aguilera in Mexico. The district court found on remand that Aguilera then falsely presented that method of identification when attempting to return, alongside Surety, to the United States. By Aguilera doing so, border officials were therefore uninformed (by her or Surety) of Aguilera's true identity, or of the outstanding warrant for her arrest. In other words, her effort at the time of her arrest, embraced by Surety from the standpoint of facts available to the district court, was directed toward remaining free from custody, not surrendering to it. As to Surety, rather than turning Aguilera into authorities at the port of entry when he had an opportunity to do so, he too was detained and charged with criminal acts when Aguilera's plan failed and she was arrested for crimes stemming from her possession and misuse of the stolen driver's license supplied by Surety. The inescapable conclusion is that not only did Surety's efforts not aid Aguilera's apprehension, they appear to have been directed toward her failed effort to avoid apprehension. Likewise, prior to Aguilera's arrest, Surety provided no information regarding the circumstances Surety then knew to exist on which the arresting officer could have arguably relied in detecting that Aguilera was not whom she was pretending to be, the very fact (wholly unrelated to the pending

10

case with which Surety claims to have assisted) that led to her being arrested and ultimately returned to Luna County for prosecution.

**{13}** Under these circumstances, applying the applicable rule and statute is a straightforward proposition. On the record before it, the district court was not only within its discretion to conclude that Aguilera was not "surrendered [by Surety] into custody," *see* Rule 5-406(D), it was not afoul of Section 31-3-2(F). Thus, under Rule 5-406(C), the district court was permitted to "declare a forfeiture of the bail." We observe also that *Amador* contains an additionally instructive sentence: "Here the bondsman did not connive with the defendant to avoid justice." 1982-NMSC-083, ¶ 15. Such cannot be said about Surety on the record before us despite what may have begun as a well-intentioned effort by Surety to effectuate Aguilera's return to the United States.

**{14}** Surety lastly argues that the State failed to present the contract between itself and Surety, and that therefore the district court was precluded from forfeiting the bond posted by Surety. Our review of the record, however, indicates that this argument was not preserved. *See* Rule 12-216(A) NMRA (recompiled and amended as 12-321(A) NMRA, effective Dec. 31, 2016) ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."). "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically

11

apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). "We generally do not consider issues on appeal that are not preserved below." *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 (internal quotation marks and citation omitted). Consequently, we will not consider the merit of Surety's assertion that the bond contract must have been made a part of the record proper.

{15}    Based on the reasons set forth above, we affirm.

{16}    **IT IS SO ORDERED.**


                                        _____
                                        **J. MILES HANISEE, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**M. MONICA ZAMORA, Judge**