This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                  **No. A-1-CA-35277**

**HUGO MACIAS,**

Defendant,

and

**A PACHECO BONDING, INC.,**

Surety-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Judith K. Nakamura, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Jason M. Alarid
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}     A Pacheco Bonding, Inc. (Surety) appeals a district court order and judgment denying its motion to exonerate a bond and forfeiting the bail bond Surety posted on behalf of Defendant Hugo Macias. Defendant failed to appear before the district court for a status hearing in January 2014. As a result, the district court declared a forfeiture of the bond and issued an order that Surety show cause why a judgment of forfeiture should not be entered. The district court then conducted a series of eleven hearings addressing forfeiture of the bond and ultimately entered the judgment nearly two years later in December 2015. On appeal, Surety argues that the district court's decision to forfeit the entire bond was an abuse of discretion. Having duly considered Surety's argument, we hold that the district court did not abuse its discretion with regard to the bond at issue in this case and, therefore, affirm.

{2}     New Mexico's statutory scheme governing the forfeiture of bonds recites that "[w]henever a person fails to appear at the time and place fixed by the terms of his bail bond, the court . . . may declare a forfeiture of the bail." NMSA 1978, § 31-3-2(B)(2) (1993). Nonetheless, "if it appears that justice does not require the enforcement of the forfeiture[,]" the district court "may direct that a forfeiture be set aside." Section 31-3-2(C). Given the broadly discretionary language used to authorize both forfeiture and exoneration, this Court reviews the district court's ruling on

2

whether or not to declare a forfeiture for an abuse of discretion. *See State v. Pacheco*, 2008-NMCA-055, ¶ 25, 143 N.M. 851, 182 P.3d 834.

{3} In this case, the district court's order forfeiting the bond included detailed findings laying out the chronology of events below.[1] On appeal, Surety does not challenge that chronology. Instead, Surety takes issue with a determination by the district court regarding Surety's diligence, challenging "the [c]ourt's finding that [Surety was] not diligent before or after the forfeiture of the bond." In particular, Surety argues that it acted with due diligence when attempting to bring Defendant back from Mexico, where he appears to have fled. As a result, Surety argues, the interests of justice do not require enforcement of the forfeiture. For support, Surety relies upon *State v. Amador*, 1982-NMSC-083, 98 N.M. 270, 648 P.2d 309. In that case, our Supreme Court found an abuse of discretion where a forfeiture was ordered in spite of the fact that the bondsman had done everything it could to produce a defendant who was incarcerated in Texas at the time set for trial. *Id.* ¶¶ 2, 15-16.

{4} As noted by the district court, however, the facts of the present case are distinguishable from *Amador*. In particular, with regard to Surety's diligence, the district court found that Surety

---

[1]As the parties to this appeal are familiar with the facts of this case, the district court's full chronology of events will not be reiterated in this opinion.

3

did not take any steps to confirm Defendant's citizenship other than taking him at his word that he was a U.S. citizen and did not even meet with Defendant prior to posting his bond. [Surety] did not follow up when Defendant failed to check in as agreed. After Defendant failed to appear, although [Surety's agent] spoke with Defendant on January 23, 2014, he did not attempt in-person contact until January 25, 2014, only returned to Defendant's residence three times, and did not speak with neighbors until five months late[r]. Although Defendant's whereabouts in Mexico were reasonably known in February 2014, no efforts were made to send someone associated with the bonding company to Mexico until August 2015. Based on [Surety's agent's] invoice, the majority of his efforts to locate Defendant were spent in making phone calls to Defendant's brother and sister-in-law and conducting internet and database searches.

Thus, in finding that Surety was "less than diligent," the district court in this case was relying upon Surety's actions both before and after Defendant violated the conditions of his release. As already noted, Surety's appeal does not challenge the district court's chronology of events; Surety merely argues that these facts do not establish its lack of diligence.

{5}     With regard to its actions before Defendant failed to appear for a status hearing, Surety argues that it has "no means to verify [s]ocial [s]ecurity numbers[,]" and was "not required to have known [Defendant's] immigration status." Surety does not, however, explain why Defendant was never asked whether he had a passport, why no one met with Defendant before posting bond, or why there was no follow-up when Defendant apparently failed to check in with Surety's agent.

4

**{6}**      With regard to its actions after Defendant's violation of his conditions of release, Surety claims that the State failed to obtain a federal warrant, thereby preventing Defendant's return from Mexico. In September 2014 the assistant district attorney in this case told the district court that she was "in contact with the U.S. Marshals and the FBI to get an unlawful flight to avoid prosecution warrant issued." Similarly, a year later, Surety told the court that "U.S. authorities are on the page to be ready to receive him . . ., but we have to be the ones to sort of facilitate him becoming in custody." Surety's subsequent attempt to facilitate Defendant "becoming in custody," however, was prevented by Mexican police. Based upon the available record, it is unclear whether the State was able to obtain a federal warrant and, if not, why Surety believed otherwise. What can be said, however, is that the district court conducted a hearing on Surety's motion to exonerate the bond, and Surety offered no evidence at that hearing that might have answered those questions. In the absence of such evidence, Surety has not demonstrated any abuse of discretion in connection with any implied findings or conclusions related to any federal warrant.

**{7}**      And, finally, Surety directs our attention to a passage from *Amador* dealing with the equity of forfeiture "when a bondsman has been diligent in his efforts to apprehend and bring back for trial a defendant but has been thwarted by the actions of another sovereign jurisdiction." 1982-NMSC-083, ¶ 14. Again, the present case is

5

distinguishable from *Amador*. In *Amador* the bondsman promptly located the defendant in a Texas jail, assured that a detainer was filed in Texas, and offered to pay extradition and transportation costs associated with bringing the defendant back to New Mexico. *Id.* ¶ 15. Thus, in *Amador*, the State was "not unduly prejudiced by the defendant's failure to appear" since he could be returned for trial upon the completion of his sentence in Texas. *Id.* Here, Surety can offer no assurance of any sort that Defendant, who remains at large, will ever be returned to New Mexico to face trial. Thus, the district court properly determined that the facts of this case more closely resemble those of *Pacheco*, 2008-NMCA-055, which involved a defendant who was at large at the time he violated the conditions of his release and remained at large a year later when the district court finally entered a judgment of forfeiture. *Id.* ¶ 28.

{8}     The ultimate purpose of a bail bond is to secure a defendant's attendance at trial. *See Amador*, 1982-NMSC-083, ¶ 13. Given that purpose, a bond may be forfeited, "not as a punishment to the surety or to enrich the Treasury of the State, but as an incentive to have the accused return or be returned to the jurisdiction of the court." *Id.* (internal quotation marks and citation omitted). As the district court accurately noted, exoneration of the bond in this case "would remove any incentive that [Surety] has for producing Defendant." *See* § 31-3-2(F) ("When a judgment has been rendered against the defendant or surety for the whole or part of the penalty of

6

a forfeited recognizance, the court rendering such judgment shall remit the amount thereof when, after such rendition, the accused has been arrested and surrendered to the proper court to be tried on such charge or to answer the judgment of the court, provided that the apprehension of the accused in some way was aided by the surety's efforts or by information supplied by the surety.").

{9}     Fundamentally, the district court's order and judgment leaves in place Surety's incentive to see that Defendant is ultimately produced for trial. In doing so, the district court is merely enforcing Surety's contractual agreement with the State, by which Surety became a guarantor of Defendant's appearance. Under the circumstances of this case, we cannot say that the district court abused its discretion by concluding that the interests of justice do not prevent forfeiture of the bond. The order and judgment of the district court is affirmed.

{10}     **IT IS SO ORDERED.**

_____
**STEPHEN G. FRENCH, Judge**

7

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**DANIEL J. GALLEGOS, Judge**