This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **A-1-CA-35637**

**RAMON LORENZO,**

Defendant,

and

**HOWELL BONDING, INC.,**

Interested Party/Surety-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Hector H. Balderas, Attorney General
Walter M. Hart III, Assistant Attorney General
Albuquerque, NM

for Appellee

Titus and Murphy Law Firm
Tyson K. Gobble
Farmington, NM

for Appellant

1

**MEMORANDUM OPINION**

**KIEHNE, Judge.**

**{1}** Howell Bonding, Inc. (Howell) appeals from a judgment partially forfeiting the bail bond it posted on behalf of Defendant Ramon Lorenzo. Howell argues that forfeiture of the bond was improper because the district court did not send it written notice within four days of the district court's declaration of forfeiture of the bond, as required by NMSA 1978, Section 31-3-2(B)(2)(b) (1993). Concluding that Howell has failed to show that it was prejudiced by the district court's failure to strictly comply with the statute, we affirm the district court's ruling. We decline to address Howell's argument on costs.

**I.    BACKGROUND**

**{2}** Defendant was indicted on several felony charges in connection with a robbery and shooting at a diner in Milan, New Mexico. Howell posted a $100,000 bond on behalf of Defendant, who was set to go to trial with a co-defendant on the morning of October 5, 2015. Without explanation, Defendant failed to appear at his scheduled trial. The district court stated its intention to forfeit Defendant's bond if he did not appear by 1:00 p.m., but Defendant did not appear. The court issued a bench warrant for Defendant's arrest that same day. The district court proceeded with trial against the co-defendant, which ended on October 9, 2015.

{3} The State filed a request for a hearing on the bond forfeiture on October 19, 2015, and certified that it mailed the request to Howell that same day. The district court issued a notice of intent to forfeit the bond on October 23, 2015, and set a hearing on November 23, 2015. The clerk's office served this notice on Howell via certified mail on October 30, 2015.

{4} Howell began looking for Defendant in the Grants area on November 1, 2015. Howell contacted the District Attorney's Office to ask whether the prosecution had any information which might be helpful to Howell's search. Howell also spent time searching for Defendant by contacting his family and friends and by searching social media websites. Howell went to the Grants area three times, on November 1 for three to four hours, on November 6 or 7 for six hours, and "all day" on November 21, 2015. Defendant was arrested on November 21, 2015, by a Grants Police Department officer responding to a call about an individual who was running through some back yards in a residential area. The arresting officer recognized that Defendant was "wanted" after arresting him. The arrest was made while individuals working for Howell who were searching the area were having dinner at a nearby restaurant, taking a break from their search for Defendant. The arrest was made in an area that Howell had been searching.

{5} The hearing set for November 23, 2015 was rescheduled and was ultimately held on two days in January and February 2016. After presenting evidence about

3

its efforts to locate Defendant, Howell argued that its bond should not be forfeited because the district court failed to comply with Section 31-3-2(B)(2)(b), which states that when a district court declares a bail bond forfeiture due to a criminal defendant's nonappearance in court, the district court "shall . . . give written notice thereof to the surety within four working days of declaration[.]" Howell also argued that the late notice prejudiced it by effectively giving Defendant a head start, making it harder to find him.

{6}     At the end of the hearing, the district court acknowledged that the statutory notice of the declaration of forfeiture had not been sent to Howell within the required four-day period, but stated that it would have been impractical to send the notice during the co-defendant's jury trial, and that failure to comply with the four-day deadline did not mean that the bail bond was immune from forfeiture. The district court said that it would not forfeit the entire bond amount because notice was not provided to Howell in timely fashion, but that it would forfeit $30,000 of the bond because of the additional expenses the State would incur in holding a jury trial for Defendant.

{7}     The district court later filed a written decision, with findings of fact and conclusions of law, confirming its oral decision that $30,000 of the $100,000 bond should be forfeited. In its order, the district court found that Howell had "demonstrated no prejudice" as a result of the district court's failure to send the

four-day notice of the bond forfeiture. The district court explained this finding as follows:

> If prejudice could be claimed by Howell . . . , it would be that Howell could have reduced its liability by capturing . . . and delivering [Defendant] to the [c]ourt before the Grants Police Department arrested him. Even this is extremely thin and only conjecturally supported by the evidence. However, because there is some chance that Howell may have caught [Defendant] before the [p]olice arrested him if he had another ten days, there is no prejudice because the [c]ourt only forfeited $30,000[] of a possible $100,000[] and if Howell had delivered [Defendant], the [c]ourt obviously would have considered that matter favorably. The court is being quite lenient in only forfeiting 30 [percent] of the bond and considers that even though Howell did not deliver [Defendant] after thirty three days, the time [Defendant] was a fugitive was not extraordinarily lengthy, minimizing the cost and potential prejudice to the State.

{8}    The district court further concluded that Section 31-3-2(B)(2)(b) is procedural in nature and that the four-day notice provision conflicts with Rules of Criminal Procedure 5-406(C) and 5-407 NMRA because the rules do not state a time in which notice of forfeiture must be provided to a surety. Because the district court found that the statute was procedural in nature, it found that the rules would supersede the statute and concluded that the statutory four-day notice requirement did not control. Though our reasoning differs from that of the district court, we agree that Howell was not prejudiced by the district court's failure to strictly comply with the statute's four-day notice provision, and therefore we affirm the district court's judgment on the bond.

**II.    Discussion**

5

## A. Standard of review

**{9}** We review a district court's order forfeiting a bond for abuse of discretion. *State v. Pacheco*, 2008-NMCA-055, ¶ 25, 143 N.M. 851, 182 P.3d 834. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). We review de novo the parties' arguments about the meaning and effect of the four-day notice deadline in Section 31-3-2(B)(2)(b) because statutory interpretation presents an issue of law. *See State v. Smith*, 2009-NMCA-028, ¶ 8, 145 N.M. 757, 204 P.3d 1267 ("Statutory interpretation is a question of law, which we review de novo" (internal quotation marks and citation omitted)).

**{10}** We may affirm an order of the district court if it is right for any reason, so long as doing so does not require us to look beyond the factual allegations that were raised and considered below, and if it would not be unfair to the appellant to do so. *Atherton v. Gopin*, 2015-NMCA-003, ¶ 36, 340 P.3d 630. Further, we note that "an error is harmless unless the complaining party can show that it created prejudice." *Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115; *see Pacheco*, 2008-NMCA-055, ¶ 21 (noting that surety must demonstrate prejudice as a result of not receiving timely notice); *see also* Rule 1-061 NMRA ("No error or defect in any ruling or order or in anything done or

omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

**B.      The law governing bail bonds**

{11}      The purpose of a bail bond is to secure the defendant's appearance at trial. *State v. Amador*, 1982-NMSC-083, ¶ 13, 98 N.M. 270, 648 P.2d 309. It is not intended to be a source of revenue for the state. *Id.* By releasing a defendant on a bail bond, "[t]he state is relieved of the expense and burden of keeping the defendant pending his trial." *Id.* "The state is also aided in its efforts to recapture a fugitive defendant by the bondsman, who, it is presumed, will be moved by an incentive to prevent judgment (on the forfeiture) or, if it has been entered, to absolve it and to mitigate its penalties." *Id.* (internal quotation marks and citation omitted). To promote the purpose of bail, bondsmen should be encouraged to enter into bail contracts. *Id.* ¶ 14.

{12}      The surety on a bail bond is considered to have custody of the defendant. *Id.* ¶ 7. The bondsman's obligation, however, is not to produce the defendant at trial, but rather is "an obligation to answer, to the extent of the penalty, for the default of

7

the []defendant[] in the event []he[] did not appear on the date set for trial." *Id.* ¶ 5 (omission, internal quotation marks, and citation omitted). A surety becomes liable on a bail bond when the defendant fails to appear as required, and the surety cannot avoid that liability by explaining where the defendant was or by obtaining a delay of the trial to try to find the defendant. *Id.* Rather, if the defendant fails to appear in court for his or her trial, the surety may only attempt to mitigate its liability by locating the defendant and bringing him or her to court. *Id.*

**C.     Failure to comply with Section 31-3-2(B)'s four-day notice requirement does not preclude a district court from entering judgment on a bail bond unless the surety proves that it was prejudiced by the failure**

{13}     Howell argues **[BIC 4-17]** that the district court should not have entered any judgment on the bail bond because it failed to provide Howell with the four-day notice required by Section 31-3-2(B), which provides as follows:

> Whenever a person fails to appear at the time and place fixed by the terms of his bail bond, the court:
>
> > (1)     may issue a warrant for his arrest; and
> > (2)     may declare a forfeiture of the bail. If the court declares a forfeiture, it shall:
> >
> > > (a)     declare such forfeiture at the time of nonappearance;
> > >
> > > (b)     give written notice thereof to the surety within four working days of the declaration; and
> > >
> > > (c)     issue a bench warrant for the person's arrest.

8

Although the district court declared a forfeiture of the bond and issued an arrest warrant on October 5, 2015, when Defendant failed to appear for trial, no one disputes that it did not send Howell the required notice within four business days. The evidence did not reveal the exact date when Howell received actual notice of Defendant's non-appearance, but it appears that Howell received actual notice within several days after October 19, 2015, when the State filed its request for a hearing on the bond forfeiture and served that request on Howell.

{14}     Howell argues that Section 31-3-2(B) provided it with a right to timely notice of Defendant's non-appearance, and because it did not receive this notice, the district court could not enter judgment forfeiting the bond. Howell argues that strict compliance with the four-day notice requirement is required because that notice is intended to protect a surety's property interest and to alert the surety to the defendant's non-appearance so that it can promptly begin searching for him or her. According to Howell, failure to comply with the four-day notice requirement makes it more likely that a fugitive defendant will be able to elude pursuers and endangers the public due to the risk that a fugitive may commit more crimes while on the run.

{15}     We do not doubt that Section 31-3-2(B) is intended to promote the objectives described by Howell, and we do not condone the district court's failure to comply with the statute's notice provision, but we do not agree that a district

9

court's failure to comply with the four-day notice requirement automatically releases Howell from all liability on the bail bond. First, the statute itself does not say what, if any, consequence should flow from a violation of the four-day notice requirement. If the Legislature had intended that a district court's violation of the four-day notice requirement would automatically result in freeing a surety from all further obligation, then presumably it would have said so. It seems unlikely to us that the Legislature intended to do so, because if that were the law, then any inadvertent failure by a district court to comply with the notice deadline would mean that the surety would have no further incentive to help the state to locate a fugitive criminal defendant. As our Supreme Court said in *Amador*, one of the principal benefits of a bail bond to the state is that it provides the bail bond agent with a strong incentive to help recover fugitive defendants. 1982-NMSC-083, ¶ 13. If a surety received the windfall of a release from liability due to a court's failure to meet the notice deadline, then it would have no further incentive to search for the fugitive, which would increase the risk of the fugitive avoiding capture or committing additional crimes, the very risks that Howell itself argues the statute was intended to guard against.

{16}     Second, this Court has not interpreted the deadlines in Section 31-3-2 as absolute requirements that must be satisfied before judgment may be entered on a bail bond. Instead, we have held the failure to satisfy a deadline in Section 31-3-2

10

may provide a surety with grounds for relief if it can prove that it was prejudiced by that failure. In *Pacheco*, 2008-NMCA-055, ¶ 4, a criminal defendant failed to appear for trial. The district court timely provided the surety with the four-day notice required by Section 31-3-2(B), but did not give it timely notice under Section 31-3-2(E) of its intent to enter judgment on the bond and to hold a hearing at which the surety could appear and show cause why the bond should not be forfeited. *Pacheco*, 2008-NMCA-055, ¶¶ 15-22. That lack of notice, however, was not prejudicial, because at the show-cause hearing, the district court gave the surety more time to look for the defendant and did not enter judgment on the bond for six more months. *Id.* ¶ 21. This Court therefore declined to reverse the judgment of forfeiture due to the lack of prejudice. *Id.* ¶¶ 21-22.

{17} To be sure, *Pacheco*'s holding concerned the notice provision in Section 31-3-2(E), but Howell has provided us with no reason why *Pacheco*'s rationale should not also apply to Section 31-3-2(B). We also believe that our interpretation of the statute is more consistent with our Supreme Court's statement in *Amador* that a surety's liability on a bail bond is triggered the instant that a defendant fails to appear for trial, and that thereafter, the surety may only attempt to mitigate its liability. 1982-NMSC-083, ¶ 5. A surety's demonstration that it was prejudiced by a district court's failure to provide notice in accord with Section 31-3-2(B) would be such a mitigating circumstance.

11

**{18}** Accordingly, we hold that a district court's failure to comply with the four-day notice requirement in Section 31-3-2(B) does not automatically absolve a surety from liability on a bail bond; instead, the surety's liability is diminished only to the extent that it can demonstrate that the failure to provide it with timely notice prejudiced its ability to locate the defendant.

**{19}** We conclude that it is unnecessary to resolve the parties' extensively briefed dispute about whether the four-day notice provision is "substantive" or "procedural," because whether the surety's right to timely notice is substantive or procedural, the surety must demonstrate prejudice to obtain relief, and as we explain below, Howell did not do so here. We also need not resolve their lengthy dispute about whether Section 31-3-2(B)(2)(b)'s four-day notice provision conflicts with, and is therefore overridden by, the more generous notice provisions in Rules of Criminal Procedure 5-406 or 5-407, because whatever deadline applies, the surety must demonstrate prejudice, which Howell failed to do here.[1] Finally, we decline to address the State's argument, offered as an alternative basis for affirmance, that if Section 31-3-2(B) is substantive in nature, then it violates the constitutional separation of powers. Since we do not need to decide whether

---

[1]We note, however, that this Court recently stated that there is no conflict between Section 31-3-2 and Rule 5-406. *See State v. Naegle*, 2017-NMCA-017, ¶ 15, 388 P.3d 692.

Section 31-3-2(B)'s notice provision is substantive or procedural in nature, we do not need to decide this constitutional issue.

**D.    Howell failed to demonstrate that it was prejudiced by the district court's    failure to comply with Section 31-3-2(B)'s notice provision**

{20}    Howell claims that it was prejudiced because the district court's failure to provide it with timely notice of Defendant's failure to appear gave him a "head start" of several weeks, thus interfering with its ability to locate Defendant. Here, however, the district court specifically found that Howell had failed to carry its burden to demonstrate the existence of prejudice resulting from the district court's failure to comply with the four-day notice requirement. Although Howell provided generalized testimony to support its belief that Defendant could have been found sooner if Howell had received timely notice, the district court found that Howell's claim was "extremely thin and only conjecturally supported by the evidence." *See State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701 (stating that prejudice must be more than speculative). We do not second-guess the district court's credibility determinations or reweigh the evidence ourselves. *See State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (stating that an appellate court does not second-guess the fact-finder's credibility determinations, reweigh evidence, or substitute its judgment for that of the fact-finder).

{21}    Despite its rejection of Howell's prejudice claim, the district court nevertheless declined to forfeit the entire $100,000 bond amount, and instead

13

entered judgment for $30,000, acknowledging as a mitigating circumstance the possibility that Howell might have located Defendant before the police if the statutory notice had timely been provided to Howell. The district court also considered Howell's efforts to locate Defendant as a mitigating circumstance, despite its doubts about whether those efforts were "totally reasonable." In addition, the district court stated that Defendant's time as a fugitive was not "extraordinarily lengthy," which minimized the cost and potential prejudice to the State. But the district court also recognized that some forfeiture was called for, because Defendant had not appeared for his scheduled trial with his co-defendant, thus forcing the State to incur the expense of conducting two jury trials.

{22}    We believe that the district court's determination was well within the discretion provided to it by Section 31-3-2(C), which states that the court "may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." The district court's decision was also within the discretion provided to it by Section 31-3-2(E), which states that "[i]f good cause is not shown [why judgment should not be entered against the surety for the amount of the bail bond], the court may then enter judgment against the obligors on the recognizance, for such sum as it sees fit, not exceeding the penalty fixed by the bail bond or recognizance." Although Howell plainly believes that no forfeiture should have been ordered at all, its mere

14

disagreement with the district court's decision to order a partial forfeiture of the bond does not suffice to establish that the district court abused its discretion.

{23}    Howell also argues that even if a partial forfeiture was warranted, the $30,000 amount was arbitrarily set, because "[t]he State did not present any evidence as to the costs to the State because of . . . Defendant's failure to appear[,]" and it states that "[t]here are no facts or evidence on the record that correlate to the forfeiture amount of $30,000[]." Howell does not direct us to any place in the record where this particular argument was preserved. But even if it was preserved, we conclude that it is waived as undeveloped because Howell's argument on this point is three sentences long and does not cite the record or any authority in support of this claim. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

**E.      Howell's challenge to the district court's cost award lacks merit because the district court awarded no costs**

{24}    Howell's final argument is that it was "punitive in nature and not in the spirit of the law" to award both costs and a partial forfeiture of the bond. **[BIC 23-24]** But although the district court stated its intent to award "costs to the State in an amount to be determined at a future hearing[,]" **[2 RP 637]** Howell does not direct us to any order awarding costs against it. We have been unable to locate any such award in the record, perhaps because the State informed the district court that it

15

was not seeking costs. Because the State declined to seek costs and because it appears that the district court awarded no costs, we reject this claim.

**III.    CONCLUSION**

{25}    We affirm the district court's judgment.

{26}    **IT IS SO ORDERED.**


_____

**EMIL J. KIEHNE, Judge**


**WE CONCUR:**


_____

**JULIE J. VARGAS, Judge**


_____

**HENRY M. BOHNHOFF, Judge**